BOWEN CARPENTER, Respondent, *v.* THE EASTERN TRANS-PORTATION COMPANY, Appellant.

In an action to recover damages for injuries to plaintiff's canal boat, alleged to have been caused by defendant's negligence, plaintiff claimed, and his evidence tended to show, that two of defendant's tug-boats, in consequence of being improperly moored and fastened to a wharf, broke loose in the night-time and drifted down upon plaintiff's boat, doing the damage complained of.   Defendant's evidence tended to show that its tugs did not in fact strike plaintiff's boat, and it was claimed that if they did, they were broken from their mooring by floating ice, without negligence on the part of defendant.   After the court had charged that defendant was liable only for negligence, and that if the jury found that the tugs did come down on the boat, they must further inquire if there was negligence in making them fast, it charged that, if the tugs become loosened from their moorings and come down on plaintiff's boat, defendant was chargeable with this negligence.   This was excepted to.   *Held*, no error ; that the intent was, not to charge that the mere fact that the tugs became loosened and came in contact with plaintiff's boat was sufficient to establish negligence, but simply that if the jury found such fact, then defendant was chargeable, provided they found it guilty of negligence in mooring the tugs.

Subsequently, at the request of defendant's counsel, the court charged that if defendant's tugs came down against plaintiff's boat and were forced to do so by pressure of ice, which could not have been avoided by the exercise of care and prudence, there could be no recovery. *Held*, that if there could have been any possible misunderstanding on the part of the jury of the portion of the charge excepted to, it was removed.

In such an action, evidence on the part of defendant that plaintiff was insured and has received the amount of his loss from the insurer, is incompetent ; as is also evidence showing an agreement between plaintiff and the insurer as to maintaining an action.

A canal boatman, as a witness for defendant, was asked : "Did Mr. Car-

penter (plaintiff), *in your opinion* as a canal boatman, in any way omit or neglect to do anything which he might have done to save his boat?" This was objected to and excluded. *Held,* no error.

An expert, in such case, may be asked whether certain acts which are proved are seamanlike and proper, under a given state of circumstances ; but will not be allowed to express his opinion as to what was or was not done as matter of fact.

(Argued November 15, 1877; decided January 15, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover damages for injuries alleged to have been sustained by plaintiff's canal boat, through the negligence of defendant.

It appeared on the trial that defendant had been employed to tow plaintiff's boat from New York to Bridgeport. The boat was taken by one of defendant's tugs from New York to Port Morris, on the East river, where tows going east, up the Sound, were usually made up. They arrived at Port Morris toward sundown, at a flood-tide. The boat was moored to a wharf to wait over until morning. East of it were moored abreast two of defendant's tugs, their sterns to the east. During the night, and upon the change of the tide, as plaintiff's evidence tended to show, the tugs, in consequence of insufficient mooring, broke loose and drifted down upon plaintiff's boat, doing the damage complained of. The fact that the tugs did in fact strike plaintiff's boat, was disputed by defendant's witnesses. The further facts appearing are sufficiently set forth in the opinion.

*John Clinton Gray,* for appellant. It was error to leave to the jury to determine, from the whole case, whether defendant was chargeable with negligence. (*Baulec* v. *N. Y. & N. H. R. R. Co.,* 59 N. Y., 366.) Defendant was not subject to any of the liabilities of a common carrier. (*Caton* v. *Rumney,* 13 Wend., 387; *Wells* v. *St. Nav. Co.,* 2 N. Y., 204; *Milton* v. *H. R. St. Co.,* 37 id., 213; *Arctic Ins.*

*Co.* v. *Anstin*, 54 Barb., 559; *Taft* v. *Carter*, 59 id., 67; *Leonard* v. *Hendrickson*, 18 Penn. St., 40; *Hays* v. *Paul*, 51 id.) A party charging negligence must prove it; it will not be presumed. (*Parrott* v. *Wells* 15 Wal., 537; *R. R. Co.* v. *Reeves*, 10 id., 176; 11 id., 129, 135; *Lamb* v. *Camd. R. R. Co.* 46 N. Y., 271; *Button* v. *R. R. Co.*, 18 id., 248; *Daniel* v. *Met. R. R., Co.*, 3 C. P., 216, 591.) A new trial should be granted where the jury may have been misled by the remarks of a judge, or by instructions which are inconsistent. (*Green* v. *H. R. R. Co.*, 32 Barb., 33; *Weber* v. *Kingsland*, 8 Bosw., 447.)

Rapallo, J. We are of opinion that the court did not err in refusing to dismiss the complaint, or to direct a verdict for the defendant. It was conceded that the defendant was not liable as a common carrier, but only for negligence; and although, upon the question of negligence, there was evidence from which the jury might, perhaps, have found that the loss of the plaintiff's boat was occasioned by the pressure of an extraordinary flow of ice, and without negligence, still there was other evidence from which they may have inferred that the defendant's tugs were imprudently and unsafely moored at the wharf, so as to expose them to an unnecessary amount of pressure, or that the fastenings were insufficient to hold them, and that, in consequence of negligence in these respects, the fastenings gave way, and the tugs drifted on to plaintiff's boat and caused the damage. We think the evidence presented a question of fact which could not properly have been taken from the jury. It would be out of place here to discuss the evidence in detail, but it is sufficient to advert to the testimony that when the boats were moored to the wharf, the wind was easterly, ice was floating up the river with the flood-tide, and it was naturally to be expected that it would return with the ebb, when its velocity would be increased by its going with the wind as well as the tide. The captain of the tug-boat Terror testified that they were afraid of the ice that night. The danger

was to be apprehended from the eastward. The tugs were moored to the eastward of the plaintiff's boat; one of them (the "Terror") was fastened to the dock, and the other (the "Vim") outside and abreast of it, both having their sterns to the eastward, and their bows towards the plaintiff's boat. The Vim was made fast to the Terror, and had but one line to the dock. Thus the surface of the sterns of both boats was presented to the ice, which might be expected to return with the ebb-tide. The width of the two boats was thirty-five to forty feet, and the fastenings of the Terror had to bear the strain of both boats, being relieved only to the extent of the one line from the Vim to the wharf, which of itself was clearly insufficient, as the testimony on the part of the defendant establishes that the fastening under ordinary circumstances consists of more than one line for a single boat. The pilot says three lines are usual, and the captain testified that when ice is expected additional lines are used. There was also some question on the evidence as to the sufficiency of the fastening of the Terror to the dock. There was evidence that all the lines passed through one ring, which broke. The result was, as testified by some of the witnesses, that when the ice came, the Terror broke loose; and although the testimony is conflicting, there was evidence which authorized the jury to find that she drifted down on the plaintiff's boat, and caused her to break away from her fastenings, and finally to sink. There is also evidence tending to show that, notwithstanding the dangerous circumstances, no watch was kept up on the tugs. No warning was given of the approach of the ice, and the captain, after he had turned in, was aroused by the snapping of the breast-line of the Terror. Upon this testimony, we think it was a fair question for the jury whether due care and skill had been exercised by the tugs.

This question was fairly and clearly submitted to the jury, with proper instructions, and they were also properly instructed to find whether the plaintiff was guilty of any contributory negligence, and whether he did all that he

should have done to save his property after the accident. All these issues the jury determined in favor of the plaintiff. The evidence was not such as would have justified the court in taking the question of contributory negligence from the jury and deciding it in favor of the defendant, as is claimed by the appellant.

Several exceptions were taken to the charge. We have examined them all, but the only one which requires notice is to a sentence in which the judge used this expression : " If those tugs did come down on the plaintiff's boat there, and became loosened from their moorings, then the defendants are chargeable with this negligence." If the fair interpretation of this charge is that the mere fact that the tugs became loosened from their moorings, and came in contact with the plaintiff's boat, was sufficient to charge the defendant with negligence, the instruction was erroneous; but it does not appear to us that the expression, in the connection in which it was used, meant any such thing, or could have been so understood by the jury. The judge had clearly instructed the jury that the defendant was liable only for negligence. He had submitted to them the question whether the defendant was guilty of negligence in the manner of mooring the tugs at the wharf. He had distinctly charged them that if they should find, upon the evidence, that the tugs came down upon the plaintiff's stern, it would then become an important question for them whether the defendant's agents were guilty of negligence in making their tugs fast to the wharf. After reviewing the testimony on the question of negligence in this respect, he adverted to the extraordinary conflict in the evidence as to whether the tugs did in fact break loose or come in contact with the plaintiff's boat, and then made use of the expression excepted to, viz., that if the tugs did break loose and come down on the plaintiff's boat, the defendant was chargeable with this negligence. What negligence ? The jury must have understood that the judge meant negligence in mooring the tugs, provided they found the defendant guilty of such negligence. If the

tug did not come in contact with the canal boat, the question of negligence in mooring the tug was immaterial.   What the judge meant was, that if in consequence of such negligence the boats came together, the defendant was chargeable.   They could not have understood that the fact of contact proved negligence, for he had already distinctly negatived that idea by charging that if they found that the tug came down on the boat they must further inquire whether there was negligence in making the tugs fast.   Any possible misunderstanding in this respect was removed by the judge subsequently charging, at the request of the defendant's counsel, that if the defendant's boats came down against the plaintiff's boat, and were forced to do so by pressure of ice upon the tug, which could not have been avoided by the exercise of care and prudence, there could be no recovery.

We find no error in the charge, and the only remaining exceptions relate to rulings upon testimony.   Of these there were several, which have been urged on the argument.   First. To the refusal of the judge to allow defendant to show that plaintiff was insured and had received the amount of his loss from the insurance company.   This ruling was correct. (*Merrick* v. *Brainard*, 38 Barb., 589, affirmed; 34 N. Y., 208; *Hall* v. *Ins. Companies*, 13 Wallace, 367.)   Second. To the refusal to allow testimony showing an agreement with the insurance company as to maintaining this action.   This depends upon the same principle.   As to its bearing, as showing the interest of the plaintiff, he already appeared as plaintiff in the action, having all the interest it is possible for a witness to have.   Third. To the exclusion of the question to Moran whether Port Morris was, in his opinion, a safe place to lay.   Independently of all other considerations, it is sufficient to say that no question was in issue on that point. It had been shown to be the customary place, and the propriety of stopping there had not been assailed.   The only question suggested was as to the particular part of the docks. Fourth.  To the exclusion of the question to Moran: "Did Mr. Carpenter, *in your opinion* as a canal boatman, in any

way omit or neglect to do anything which he might have done to save his boat ?" This question was clearly improper. An expert may be asked whether certain acts which are proven are seamanlike and proper, under a given state of circumstances; but he cannot be allowed to express an opinion as to what was or was not done as matter of fact. The question, when put in a different form, was afterwards fully answered. When asked whether he knew of anything that plaintiff might have done to save his boat after it struck, the question was allowed and answered.

We have examined all the exceptions in the case, and find no ground upon which the judgment should be reversed; it should, therefore, be affirmed.

All concur.

Judgment affirmed.