J. M. PACE MULE COMPANY v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 9 October, 1912.)

1. Carriers of Goods—Injury to Stock—Negligence—Evidence—Nonsuit.

In an action for damages against a railroad company for the negligent injury to two mules in a car-load shipment, which resulted in their death, there was evidence tending to show that the rules were "tired and droopy" on their arrival at destination, and not in good condition; that they died on the night following the day of their receipt, were dissected, and their bodies were discovered to have been bruised, after removing the skin, and their internal organs in a state of congestion and decomposition. The shipment had been receipted for by the initial carrier as in good condition: *Held*, a motion to nonsuit was properly disallowed, and the issue as to defendant's negligence properly left to the jury.

2. Carriers of Goods—Negligence—Expert Evidence—Questions of Fact—Assignment of Claim.

In an action against a common carrier for damages for the negligent injury to two mules in a car-load shipment, resulting in their death, testimony of an expert veterinarian, who had made a *post-mortem* examination and found them bruised and in a bad condition internally, that, from the examination, in his

"opinion the mules had been jammed up in the car," is incompetent as an expression of an opinion as to a fact of which he had no personal knowledge and which was involved directly in the issue.    *Summerlin v. R. R.*, 133 N. C., 551, cited and approved.    As to whether the plaintiff can recover for one of the mules sold to another and replaced by him, without evidence that the cause of action had been assigned, *Quære*.

APPEAL by defendant from *Cline, J.*, at May Special Term, 1912, of WAKE.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*S. Brown Shepherd for plaintiff.*
*Murray Allen for defendant.*

WALKER, J. This is an action to recover the value of two mules alleged to have been injured in the course of transportation from East St. Louis, Ill., to Raleigh, N. C., by defendant's negligence, and to have died from said injuries the day after they were delivered to plaintiff. The jury returned the following verdict:

1. Was plaintiff's stock injured by the negligence of the defendant Louisville and Nashville Railroad Company, as alleged in the complaint? Answer: No.

2. Was the plaintiff's stock injured by the negligence of the defendant Seaboard Air Line Railway, as alleged in the complaint? Answer: Yes.

3. Did the plaintiff comply with the contract of shipment as to giving of notice to the railroad company as to his claim for damages? Answer: Yes.

3½. Could the plaintiff, by an examination of the mules in question before their removal from the depot, have discovered any injury to them? Answer: No.

4. What damages, if any, is plaintiff entitled to recover? Answer: $470.

The mules were two of a car-load of twenty-six shipped to plaintiff, and were accepted and a receipt given for them as in good condition, it appearing that the injuries were not then discoverable upon inspection. The mules were received at

Raleigh from defendant on 23 February, 1911, and one J. J. Womble purchased a pair of them from plaintiff, and had them driven the next day to Apex, where one of them died the night of 24 February. Plaintiff gave Womble another mule for the one that died. . On 24 February another mule died from his injuries, in the lot of plaintiff at Raleigh. When the mules were received at Raleigh by plaintiff they seemed to be "tired and droopy" and their general condition was not good, though there was nothing in their appearance to indicate that there had been any permanent injury to them, and certainly none likely to result fatally. The mule sold to Womble, which died, was cut open and found to be internally injured. The other, which died in plaintiff's lot in Raleigh, was dissected and afterwards examined by Dr. McMackin, an expert veterinarian, who found, after the mule's skin had been removed, that his body was badly bruised and his internal organs were in a state of congestion and decomposition. He was asked, substantially, the following question by plaintiff's counsel: State your opinion as to the cause of the mule's death, if you have one, based upon your knowledge and experience and your *post-mortem* examination of him. He answered: "My opinion is that the mule was jammed up in the car." This evidence was improperly admitted. The question required him to testify not only as to the condition of the mule when he examined him, which was proper, but to go further and give his opinion as to the existence of a fact which was almost, if not quite, the equivalent of the one directly involved in the issue. It would have been competent to have asked him if the death of the mule could have been caused by being jammed in the car, or, if the jury should find from the evidence that the mule had been jammed in the car and had received no other injury, could the death, in his opinion, be attributable to the jamming as its cause—that is, was it sufficient of itself to cause the death. A question similar to the one admitted in this case by the court was asked in *Summerlin v. R. R.*, 133 N. C., 551, and excluded by the court, and we sustained the ruling, upon the ground that the witness was called upon to state a fact of which he had no personal or competent knowledge, and not merely the opinion

of an expert. The opinion of the witness should be based upon facts admitted or found, or upon his personal knowledge, and not upon the assumption of the fact. The question should, therefore, be hypothetical, or rather supposititious, in form, following the precedents as settled by our decisions. *S. v. Bowman,* 78 N. C., 509; *S. v. Cole,* 96 N. C., 258; *S. v. Wilcox,* 132 N. C., 1120; and *Summerlin v. R. R., supra.* The Court, in *Hitchcock v. Burgett,* 38 Mich., 501, held that "a physician cannot be asked his opinion as to the cause of an injury, judging merely from the condition in which he found the patient, and without any knowledge as to how it took place." See, also, *National Union v. Thomas,* 10 App. Cases (Dist. of Col.), 277; *Carpenter v. E. T. Co.,* 71 N. Y., 574; *Van Zandt v. Insurance Co.,* 55 N. Y., at p. 179. *Lumber Co. v. R. R.,* 151 N. C., 217, and cases cited at page 222.

We conclude that there was error in admitting the question and answer, over the objection of the defendant, which was made in the proper way and in due time.

A question was raised as to the right of plaintiff to recover for the loss of the mule sold to Womble, and which died in his possession. The plaintiff contends that by giving Womble another mule in the place of the one that died, it acquired the right to sue for the value of the latter, while the defendant says that the act of giving another mule to Womble was purely voluntary and conferred no new right on the plaintiff, in the absence of an assignment of the cause of action by Womble to the plaintiff. As in the verdict all the questions of fact and law, including the damages, are so blended that the error we have noted permeates the entire record, it becomes unnecessary to decide this question, which is not free from difficulty. Besides, it may be that there was some express understanding and agreement between the parties, with respect thereto, which may appear at the next trial, and an opinion upon the meager facts now presented may prove to be still more unnecessary.

We cannot say that there was not more than a scintilla of evidence to sustain the plaintiff's case, upon the motion to nonsuit. There was no proof of any intervening physical cause sufficient to account for the death of the mules, and the condi-

tion of the bodies and the internal organs, which was disclosed by the *post-mortem* examination, indicated that they must have been subjected to very rough handling in some way. It was a question for the jury whether upon all the facts and circumstances the injuries to the mules could fairly be imputed to the negligence of the carrier in their transportation.

We order a new trial for the error in regard to the testimony of Dr. McMackin, the expert witness.

New trial.