[No. 29127. *En Banc.* February 3, 1944.]

CORA FLYZIK, *Respondent,* v. THE TRAVELERS
INSURANCE COMPANY, *Appellant.*[1]

*Williams & Davis,* for appellant.

*Clarence J. Coleman,* for respondent.

BEALS, J.—July 25, 1941, The Travelers Insurance Company, a corporation, issued to Martin J. Flyzik a policy of accident insurance, whereby, *inter alia,* it agreed to pay to plaintiff, Cora Flyzik, the wife of the insured, $2,500 in the event of Mr. Flyzik's death as the result of an accident.

Mr. Flyzik was fifty-six years of age, and weighed approximately one hundred eighty pounds. He was a safety engineer, employed as manager of the Everett Safety Council. December 25, 1941, Mr. Flyzik was apparently in good health, spent the day at home, and during a portion of the time occupied himself with some household tasks, including cleaning the basement. Between nine and ten o'clock in the evening, he was observed by his wife and daughter, and was in good health and spirits. Between seven and eight o'clock the next morning, his body was discovered in his yard, near the back of the garage, about fifty or sixty feet from the house. He was lying on the ground,

[1] Reported in 145 P. (2d) 539.

his right hand outstretched. His body was resting near an ash or rubbish can, sixteen inches in height and fourteen inches in diameter at the top, which was kept in the basement. His head was very near the opening of the can, which was lying on its side, and his left hand was slightly under the rim, but no other portion of his body was in contact therewith. There was a noticeable abrasion on the right side of his forehead. The weather was very cold, and there was considerable ice and frost on the ground.

During the following month, Mrs. Flyzik notified the insurance company that the insured had died as the result of an accident, and, the company having denied liability, this action was instituted to recover on the policy.

By its answer, the defendant admitted the issuance of the policy, and that the same was in good standing at the time of the death of the insured, but denied all the other allegations of the complaint.

The action was tried to a jury, and resulted in a verdict in plaintiff's favor. After defendant's motions for judgment in its favor notwithstanding the verdict, or in the alternative for a new trial, were denied, judgment was entered upon the verdict, from which the defendant has appealed.

The policy insured against death resulting directly and independently of all other causes from bodily injury effected through accidental means. Appellant contended upon the trial that the evidence failed to show that Mr. Flyzik died as the result of an accident within the provisions of the policy.

Appellant assigns error upon the overruling of its challenge to the legal sufficiency of the evidence and its motion for dismissal interposed at the close of respondent's case. Error is also assigned upon the denial of its request for an instructed verdict in its favor; upon the denial of its motion for judgment in its favor notwithstanding the verdict; upon the denial of its motion for a new trial; and upon the entry of judgment in respondent's favor.

Shortly after the discovery of Mr. Flyzik's body, two competent physicians were requested by respondent to

perform an autopsy. The doctors performed a partial autopsy, signing a written report embodying their findings. In this report, among other statements, is found the following: "No findings sufficient to account for death."

Appellant introduced no evidence on the trial, submitting the case after the trial court had overruled its challenge to the sufficiency of the evidence.

The doctors who performed the autopsy, Drs. A. H. Gunderson and John F. Beatty, were called as witnesses for respondent, testifying, as stated in their report, that the autopsy disclosed no condition of such a nature as to account for the death of the insured. One of the doctors further testified that when he was requested to perform the autopsy he was informed that the autopsy was desired for the purpose of determining whether or not Mr. Flyzik had died of heart disease, apoplexy, stroke, or hemorrhage of the brain. Both doctors testified that they found a slight bruise or abrasion on the forehead of the deceased, one of the doctors testifying that in his opinion this might have been caused by the fall, the other testifying that it was his opinion that the abrasion had been caused after Mr. Flyzik's death. One of these doctors testified that they observed no injury to the neck, but apparently they did not, in the course of the autopsy, extend the operation to that portion of the body.

Dr. William D. Smith, answering a hypothetical question propounded by respondent's attorney, testified that Mr. Flyzik had died as the result of a "broken neck or a terrific shock—spinal cord at the base of the brain, or a dislocation causing pressure on the cord sufficient to cause his death." In the course of the examination of this witness, the following occurred:

"Q. Now, Doctor, where a man weighted 180 lbs., what would be the effect of hitting a can with the head, in the course of falling that way? A. It would snap his head back. Q. And would the fact that he weighed 180 lbs. have any effect upon the amount of snap? . . . A. I think so. Q. Now, Doctor, the fact that his hand was out this way (indicates), does that have any significance? The right

hand was out this way (indicates), fingers extended. A. It would indicate to me he was trying to protect himself from the fall."

Dr. Arthur A. Thomle testified, in answer to a hypothetical question:

"A. I assume he fell, struck his head on the edge of the can; that he threw his head back and either snapped it, broke the neck or dislocated, whereby there was that much pressure on the cord, and he died. Q. What would be the effect of a 180-lb man falling forward, and, in the process of falling, striking his head on the edge of the can. What would be the mechanism of that? [Appellant's objection overruled] A. He would simply snap his head back quickly as he fell forward with his weight. Q. That is, the body would be down and the head up? A. Yes. It would just throw the head back like that (indicates), quickly. Q. Now, Doctor, what would be the physical situation, in your opinion, with a hand outstretched that way, the right hand? A. He would throw it out to catch—before he struck, in all probability, as a protector."

The two witnesses referred to testified at some length concerning their theories as to the cause of Mr. Flyzik's death. Evidence to the effect that prior to his death Mr. Flyzik was in good health and led an active life was nowise controverted. Dr. Smith had several times taken Mr. Flyzik's blood pressure and found it normal. The tin can above referred to was about a quarter full of ashes, also containing two empty tin cans. The testimony of Drs. Smith and Thomle was to the effect that in their opinion Mr. Flyzik was carrying the can out for the purpose of emptying it; that he slipped on the icy ground and fell, and in his fall struck his head against the can and snapped his neck back, with fatal result.

Appellant argues that the record contains no evidence that the deceased struck the ash can in falling, or that the fall broke his neck; that the testimony of Drs. Smith and Thomle was based upon assumptions which were not supported by the evidence, and were a matter of conjecture and speculation. In this connection, appellant cites the

recent case of *Cox v. Polson Logging Co.,* 18 Wn. (2d) 49, 138 P. (2d) 169, in which we said:

"This court has repudiated the so-called 'scintilla of evidence' rule and has repeatedly held that evidence sufficient to support a verdict must be substantial."

Appellant also relies upon the case of *Hill v. Great Northern Life Ins. Co.,* 186 Wash. 167, 57 P. (2d) 405, in which we said:

"In an action upon an accident insurance policy, the burden which the injured plaintiff assumes is to show that injury or death was due to accidental or other means specified in the policy."

This case presents a peculiar and unusual situation. Admittedly, Mr. Flyzik was a strong, healthy man. The autopsy shows that there was no injury to the brain, no heart or lung condition which could cause death, and that the stomach, spleen, liver, and intestines were free from any pathology. Dr. Beatty testified that in his opinion the bruise on Mr. Flyzik's forehead was made before death, giving the reason for his opinion. Dr. Gunderson testified that he believed the forehead became bruised after death, stating the reason for his opinion. It is admitted that the ground was at least fairly well covered with ice and frost. There can be no dispute but that sometime after nine o'clock on the night of December 25th, Mr. Flyzik carried the can from the basement of his home to a point behind his garage fifty or so feet from the house; that, at the spot where his body was found, something occurred which caused his death. By the evidence, many matters which might have caused his sudden death, such as a heart or brain condition, are eliminated. We agree with the trial court that respondent's theory, as developed by the testimony, was a reasonable hypothesis, and that the jury was entitled to pass upon the evidence, and that the trial court did not err in overruling appellant's challenge to the sufficiency of the evidence and denying appellant's later motion for judgment in its favor notwithstanding the verdict. *Lee v. Gleason Co.,* 146 Wash. 66, 262 Pac.

133; *Allen v. Washington Nat. Ins. Co.,* 9 Wn. (2d) 563, 115 P. (2d) 685; *Griffin v. Cascade Theatres Corp.,* 10 Wn. (2d) 574, 117 P. (2d) 651.

Appellant also assigns error upon the denial of its motion for a new trial. In this connection, appellant contends, first, that the evidence was insufficient to justify the verdict, and, second, that the court erred in giving an instruction to which appellant excepted. What has already been said disposes of the first contention concerning the evidence.

By the instruction complained of, the court told the jury in effect that, if they believed that respondent's theory concerning Mr. Flyzik's death, which theory the court detailed in the instruction, was correct, they should find for the plaintiff. By the same instruction, the court told the jury that, if after considering and weighing all the evidence,

" . . . you have as much reason or more reason to believe that the death of Martin Flyzik resulted from natural causes, then and in that event your verdict must be for the defendant and that the plaintiff, Cora Flyzik, take nothing."

Appellant argues that there was no competent evidence to the effect that Mr. Flyzik's striking the edge of the can had anything to do with his death, nor was there any evidence showing that Mr. Flyzik's fall and striking the can broke his neck and caused his death.

The evidence justified the giving of the instruction complained of, and the submission of the question to the jury.

Finding no error in the record, the judgment appealed from is affirmed.

MILLARD, STEINERT, BLAKE, JEFFERS, MALLERY, and GRADY, JJ., concur.

SIMPSON, C. J. (dissenting)—The complaint described the injury to Mr. Flyzik in the following language:

" . . . that said Martin J. Flyzik while carrying a small receptacle lost his footing and fell, striking his fore-

head and face upon the edge of an ash can that was in front of him, and that said fall and resultant blow upon the head was the proximate cause of the death of the insured."

It will be noted that no mention was made of any injury to his neck. A reading of the evidence discloses the fact that the first and only reference to a broken neck was that given by Dr. Smith in answer to the hypothetical question which was not based upon any evidence of a broken neck or of a terrific shock or of a dislocation. The questions and answers were as follows:

"Q. Well now, assuming, Doctor, that the deceased, Martin Flyzik, was a man of 56 years of age, weighing about 180 lbs., who before December 26, 1941 had lived an active life, and, other than a slightly strained back, had enjoyed good health, taking part in various sports, hunting and doing work requiring physical effort, upkeep of his lawn and house, and carrying on his job as safety engineer in a normal manner without any disability or complaint of any sort, and assuming further that on Christmas day he arose in the morning as usual, did various odd jobs about the house, returned a trailer, then had the usual Christmas dinner in the afternoon, and then took part in evening lunch without eating anything, and that on both of those occasions was in good spirits, that he was fixing up a refuge room in the latter part of the afternoon—when last seen in the evening, was seen going to return to do this, for the fixing up of the room for the blackout. Then he was last seen alive somewhere around—between 9 and 10 o'clock in the evening. Then in the morning, when Mrs. Flyzik arose and didn't discover him around, she finally went out to the rear of the garage. Now, the rear of the garage was rather rough and it was frosty and icy, and he was found there lying on his left side with his left arm around this can, under this can rather, and his head was about on the edge of this with his face protruding out, and there was an abrasion visible above the right eye. His right hand was out forward in front of him that way (indicates) with the fingers extended. The other hand, as I say, was sort of under the can. The can was lying like this (indicates) and was about a quarter full of ashes, and then there was a can and a few other ones. You actually saw the ground where this happened, did you not,

Doctor? A. Yes. Q. Now, then, thereafter, the autopsy was performed, and I will read you the autopsy:

"(Reads) 'January 7, 1942, Autopsy Report on Martin Flyzik, Done at 2:00 P. M. on December 28, 1941. Body weight was 180 lbs.; age, 56 years.; well developed; small abrasion of skin over forehead, right frontal region. No evidence of any contusion elsewhere. The skull was opened in the usual manner with no findings of any pathology of the dura meninges or brain tissue. Chest examination: The sternum was removed in the usual fashion. Lungs showed marked infiltration of anthracitic material. (he worked in coal mine many years ago) Tissue soft, no evidences of any infiltration or pathology of the lungs other than the anthracosis. The heart slightly enlarged, no evidence of any gross pathology in the heart muscle or pericardium or in the coronary vessels. The abdomen was opened in the usual manner. Stomach, spleen, liver and intestines were found free from any pathology. The stomach was found to be practically empty. Less than a teaspoon of mucous and food particles could be scraped from its walls. The mucosa appeared normal. The material was washed, filtered and concentrated. The material was evaporated and tested for common poisons by Mr. Felder of the Western Laboratories with negative findings for any toxic or poisonous materials. No findings sufficient to account for death. Signed by two doctors, A. H. Gunderson, M. D., and J. F. Beatty, M. D.' Doctor, upon those facts, what in your opinion would be the cause of Mr. Flyzik's death? . . . A. Well, due to the fact that there has been nothing found in the autopsy report to indicate the cause of death and that there is in this case a history of an injury, as indicated by the blow on the head, striking against that ash can, it is my opinion that the sudden snap of his head backward when he hit the edge of the can with his forehead, probably broke his neck. As to whether it did or not or whether there was a dislocation or whether there was a shock sufficient to the spinal cord at that level, sufficient to produce a shock that would cause his death—. My belief is, that is what happened."

Following this testimony, we find that given by Drs. Smith and Thomle as set out in the majority opinion. Timely objections were made to the introduction of all of this evidence, and, after its admission, motions were made

to strike it. The court overruled the objections and denied the motions.

The theory of a broken neck was also submitted to the jury by the court in its instructions.

As I view the evidence, the doctors in fact testified as experts concerning the manner in which the accident occurred, rather than as medical men. It is my opinion that the answers were based upon assumptions not contained in the hypothetical questions, and that, in testifying as medical experts only, they gave their opinion of the ultimate fact in issue and therefore invaded the province of the jury.

Expert witnesses who have no personal knowledge of an injury can give answers to hypothetical questions only. They cannot give their opinions upon the precise or ultimate issue before the jury.

"As already stated, respondent's case rests ultimately upon expert opinion. But the opinions of expert witnesses are of no weight unless founded upon facts in the case. The law demands that verdicts rest upon testimony, and not upon conjecture and speculation. *Anton v. Chicago, M. & St. P. R. Co.,* 92 Wash. 305, 159 Pac. 115.

"In *Bucher v. Wisconsin Central R. Co.,* 139 Wis. 597, 120 N. W. 518, appears the following statement, with which we are in accord:

" 'The verdict of a jury founded upon facts is entitled to great weight, and is almost conclusive upon this court if supported by any evidence. *But the verdict of a jury founded only upon the opinion of experts concerning the cause of a condition, which condition is itself established by the opinion of experts, has no such weight.* As was said in *Baxter v. C. & N. W. R. Co.,* 104 Wis. 307, 330, 80 N. W. 644, 652:

" ' "Opinion evidence alone is not conclusive in any case. The jury must pass upon the probabilities, and unless the opinion relied on is within the scope of reason and common sense it should not be regarded at all." *Johnson v. G. N. R. Co.* (Minn.) 119 N. W. 1061.' " *Prentice Packing & Storage Co. v. United Pac. Ins. Co.,* 5 Wn. (2d) 144, 106 P. (2d) 314. (Italics mine.)

*De Wald v. Ingle,* 31 Wash. 616, 72 Pac. 469, 96 Am. St. 927; *Berg v. Humptulips Boom & Imp. Co.,* 38 Wash. 342,

80 Pac. 528; *Cook v. Stimson Mill Co.,* 41 Wash. 314, 83 Pac.
419; *Johnson v. Caughren,* 55 Wash. 125, 104 Pac. 170;
*State v. Ingels,* 4 Wn. (2d) 676, 104 P. (2d) 944; *Oyster v.
Dye,* 7 Wn. (2d) 674, 110 P. (2d) 863, 133 A. L. R. 720;
*State v. Carlsten,* 17 Wn. (2d) 573, 136 P. (2d) 183.

The legal principle is contained in our holding in *State
v. Acklus,* 126 Wash. 65, 217 Pac. 61, wherein the court
stated:

"A physician was called by the state and testified to
having made a physical examination of the prosecuting
witness, and detailed the conditions which he found to
exist. He was then permitted to testify, over the objection
of appellant, that, in his opinion, the prosecuting witness
had had sexual intercourse. In cases of this kind the rules
must be strictly applied.

"The rule appears to be that the opinions of physicians
and surgeons may be received to show the physical condi-
tion of a person, the effect of physical injuries, by what
means such injuries might have been inflicted, and the
like; but that it is improper to permit such a witness to
express his opinion as to how such injuries were actually
inflicted, as that would be trespassing upon the province
of the jury. Jones on Evidence (2d Ed.), § 378; *People v.
Hare,* 57 Mich. 505, 24 N. W. 843; *J. M. Pace Mule Co. v.
Seaboard Air Line R. Co.,* 160 N. C. 252, 75 S. E. 994; *Chi-
cago City Ry. Co. v. Soszynski,* 134 Ill. App. 149; *Chicago
R. I. & P. R. Co. v. Sheldon,* 6 Kan. App. 347, 51 Pac. 808;
*State v. Rainsbarger,* 74 Iowa 196, 37 N. W. 153."

The holding of this court was based upon five decisions
of other courts.

In *People v. Hare,* 57 Mich. 505, 24 N. W. 843, it appears
that defendant was convicted of murder. The body of
the deceased was found under water. A physician, who
made an examination of the body, was asked the following
question:

"From the appearance of the wound, what would you
say it was caused by?"

In holding that the question was improper, it was said:

"The question calls for the fact which was to be found
by the jury. What might have caused it would have been

proper, but what did cause it was the real question for the jury."

In *J. M. Pace Mule Co. v. Seaboard Air Line R. Co.,* 160 N. C. 252, 75 S. E. 994, plaintiff sued to recover damages for the death of two mules. The holding relative to the physician's testimony is contained in the following quotation:

"The other, which died in plaintiff's lot in Raleigh, was dissected and afterwards examined by Dr. McMackin, an expert veterinarian, who found, after the mule's skin had been removed, that his body was badly bruised and his internal organs were in a state of congestion and decomposition. He was asked, substantially, the following question by plaintiff's counsel: State your opinion as to the cause of the mule's death, if you have one, based upon your knowledge and experience and your *post-mortem* examination of him. He answered: 'My opinion is that the mule was jammed up in the car.' This evidence was improperly admitted. The question required him to testify not only as to the condition of the mule when he examined him, which was proper, but to go further and give his opinion as to the existence of a fact which was almost, if not quite, the equivalent of the one directly involved in the issue. It would have been competent to have asked him if the death of the mule could have been caused by being jammed in the car, or, if the jury should find from the evidence that the mule had been jammed in the car and had received no other injury, could the death, in his opinion, be attributable to the jamming as its cause—that is, was it sufficient of itself to cause the death."

In *Chicago City R. Co. v. Soszynski,* 134 Ill. App. 149, the plaintiff, while driving a wagon, was hit by a cable train. In the action for damages, a physician was called to give his opinion as to whether or not the injuries resulted from the collision. The court said:

"He was competent to state what effects might result from the fall, but whether the effects described did result from the fall or were produced by some other cause or causes was a question for the jury."

In the case of *Chicago, R. I. & P. R. Co. v. Sheldon,* 6 Kan. App. 347, 51 Pac. 808, the plaintiff sued for personal

injuries. A physician testified that the plaintiff had spinal trouble, that opinion being based on the history of the plaintiff and personal examination. The court held that the evidence was improper, and stated the reason as follows:

"The court permitted the witnesses to assume the province of the jury, and to determine whether the condition of the defendant in error and his ailments were the direct results of the collision in question. This was a matter exclusively for the jury to determine and not a matter to be proven by expert testimony. The jury was as competent to determine this question from all the evidence as were the witnesses, and they should have been permitted to do so without being required to take the opinions of the witnesses in preference to their own."

In *State v. Rainsbarger*, 74 Iowa 196, 37 N. W. 153, the reason for the rule adopted in that case was stated by the court as follows:

"The counsel for defendant, after stating hypothetically the condition of the body of the deceased, the character of the wounds, and other matters, asked a witness, who was a physician, how the wounds upon defendant were probably made. The evidence was rightly excluded. It sought for an expression of opinion based upon matters which were to be weighed and considered by the jury, and determined by the exercise of their own judgments, and not upon the opinion of another. The matters upon which the question was based were not peculiarly within the knowledge of the witness or of the profession to which he belonged."

A hypothetical question must embrace every material element of the hypothesis founded upon the evidence. Accord: 32 C. J. S. 359, Evidence, § 552; 20 Am. Jur. 662, Evidence, § 788; *Baltimore & O. R. Co. v. Brooks*, 158 Md. 149, 148 Atl. 276; *Anderson v. Sheuerman*, 232 Iowa 705, 6 N. W. (2d) 125; *Marion v. Nunn*, 292 Ky. 251, 166 S. W. (2d) 298; *Vale v. State Industrial Accident Commission*, 160 Ore. 569, 86 P. (2d) 956.

If a question asked of experts contains matters not in the case, then it is error to allow that evidence to go to the jury. *De Haan v. Winter*, 258 Mich. 293, 241 N. W. 923;

*Equitable Life Assur. Society v. Sieg,* 53 F. (2d) 318; *Young v. Travelers Ins. Co.,* 68 F. (2d) 83; *Kentucky Traction & Terminal Co. v. Humphrey,* 168 Ky. 611, 182 S. W. 854.

In effect, the answers of the doctors were the same as if those answers had been incorporated in the question.

I am of the opinion that it was error to allow the answer to the hypothetical question to be considered by the jury, for the reason that the question was not predicated upon reference to a neck injury. It is obvious that such a question could not have been framed, because there was no evidence of that nature in the record. Aside from that, the doctor went beyond the requested answer and gave definite testimony concerning an ultimate fact which must have had great influence with the jury.

The case should be reversed and remanded for a new trial.

ROBINSON, J., concurs with SIMPSON, C. J.