LOUIS J. ANDERSON, Appellant, v. HELEN J. SHEUERMAN, Appellee.

No. 46008.

November 17, 1942.

Emmert, James & Lindgren and Lorna L. Williams, all of Des Moines, for appellant.

Stipp, Perry, Bannister & Starzinger, Donald D. Holdoegel, and Burton Joseph, Jr., all of Des Moines, for appellee.

Garfield, J.— Defendant is a widow who owns one of the better homes in Des Moines, built on a lot 200 feet wide by 400 feet deep. Plaintiff, who is 65, has done various kinds of manual labor. As a boy he did farm work in Sweden. In this country he worked in coal mines for about 25 years, was a hospital janitor about four years, and worked on different construction projects. For a number of years he has done odd jobs. On April 2, 1940, defendant hired plaintiff to rake leaves. He had not worked for defendant before. He was furnished a rake and basket and told to start by cleaning the leaves off a flower bed between the house and a driveway.

Defendant had a ''burner'' in which to burn leaves, built like a two-wheel cart. It consisted of a large wire-mesh basket mounted on an iron axle which was supported at each end by an iron wheel. It had metal handles connected by a bar in front, with a leg underneath each handle. The wires in the basket were 1⅜ to 2 inches apart with square openings between the wires. From pictures of the burner and evidence describing it, we judge the top of the basket was about 3 feet wide and 4

feet long, the bottom about 2 feet wide and 3 feet long. The basket was about 2½ feet deep. Underneath the basket was an ashpan 6 to 8 inches deep, somewhat larger than the bottom of the basket. The pan was suspended from the basket by wires at the four corners. The burner was 3½ to 4 feet high. When plaintiff started work the burner was standing back of the house. Defendant told him to get the burner, take it with him and burn the leaves in the driveway. Plaintiff had never before seen such a burner.

Plaintiff worked about two hours the first afternoon raking leaves from the flower bed, putting them in the burner with the basket furnished him and burning them. The next day plaintiff continued raking but carried most of the leaves to a ravine which ran across defendant's lot from northeast to southwest, without using the burner. Plaintiff testified, however, that he used the burner a little the second day. On the third day, plaintiff resumed his raking and burned some of the leaves in the burner during the morning. In the afternoon he carried the leaves to the ravine.

On the fourth day Ralph Lowe was employed to assist plaintiff. About four in the afternoon the ashpan of the burner was full and the two men decided to move the burner to an ash bed about 20 feet away where they could empty the pan. They moved the burner by pulling on the handle, walking backward, facing the burner, which was well filled with burning leaves. When the men had pulled the burner about 10 feet, the wheels struck a little ditch or depression 4 to 8 inches deep, causing some sparks of burning leaves to fall to the ground and set fire to grass and leaves which had not been raked. Plaintiff testified the burning leaves fell on the ground out of the front of the bottom of the basket. Lowe testified that burning ashes overflowed from the ashpan to cause the fire. The men continued to pull the burner the remaining 10 feet to the ash bed, left it, and went back to put out the blaze. After attempting to put out the flames for three to five minutes, plaintiff's trousers and long woolen underwear caught fire and he was very severely and permanently injured. Plaintiff first knew his clothing was on fire when he felt the pain from the burns.

In this suit plaintiff claims that defendant was negligent in not furnishing him a reasonably safe place to work and proper equipment, and in not warning of the danger involved. The principal contention is that the burner was not reasonably safe equipment for use under the existing circumstances. At the close of plaintiff's evidence the trial court directed a verdict for defendant and plaintiff has appealed from the judgment thereon. The ground of the motion most relied upon is that the evidence is insufficient to prove the alleged negligence.

■ I. Appellant first complains of the sustaining of an objection to a question put by his counsel to the witness Barker, fire marshal of Des Moines. He was asked to assume certain stated facts and express an opinion whether the burner would be a safe and proper instrument. One of the facts assumed was that the ashpan was the size of the bottom of the burner. The evidence did not support this statement of an important assumed fact. Appellant himself testified that the ashpan was larger than the bottom of the basket, "* * * the edges of the pan extended beyond the bottom edges of the wire basket of the burner." We conclude, therefore, that the trial court properly sustained the objection. Hypothetical questions must assume only facts that are supported by evidence. 32 C. J. S. 359, section 552; 20 Am. Jur. 662, section 788; Hall v. Chicago, R. I. & P. R. Co., 199 Iowa 607, 620, 199 N. W. 491; Stickling v. Chicago, R. I. & P. R. Co., 212 Iowa 149, 158, 232 N. W. 677.

■ II. The remaining assignments of error challenge the ruling on the motion to direct. The vital question presented is whether there was sufficient evidence to warrant a finding that appellee was negligent.

It is well settled that a master must exercise reasonable care to furnish his servant safe and suitable tools and appliances for his work. This duty is similar to the employer's obligation to furnish the servant a reasonably safe place to work. The master is not an insurer of the servant's safety but he must exercise reasonable care to eliminate those dangers which are not the usual or ordinary incidents of the service when the employer has exercised ordinary care.

■ The servant assumes the risks that naturally pertain to his work but is under no obligation to assume any risk caused

by the master's failure of duty. Swaim v. Chicago, R. I. & P. R. Co., 187 Iowa 466, 477, 478, 174 N. W. 384, certiorari denied 252 U. S. 577, 40 S. Ct. 344, 64 L. Ed. 725; Rehard v. Miles, 227 Iowa 1290, 1295, 290 N. W. 702; 35 Am. Jur. 604, 605, sections 175, 176.

Appellant contends that the burner was defective, first, because the bottom of the basket sagged somewhat, leaving a gap or opening between the front part of the bottom and the upright front end. This gap appears to be about 3 inches in width at the widest point. Appellant estimated the normal openings between the wires at from 1⅜ to 2 inches and the witness Lowe at 1¾ inches. At each side the front of the bottom of the basket was flush with the upright front end. Appellant testified that the burning leaves which caused the fire fell through this gap in the bottom of the basket. A second complaint against the burner is that the ashpan was not stationary but would swing out from underneath the basket when the burner was moved over rough ground, causing burning leaves or ashes to fall to the ground. A third claim is that the pan was too shallow and without a protecting rim around the sides of the basket to prevent the escape of fire when the burner was moved on rough ground. The ashpan was 6 to 8 inches deep, with its top edges 1 to 3 inches below the basket and extending beyond its bottom edges. Appellant also complains that appellee did not instruct him how to use the burner nor warn him of any danger therefrom.

It appears that appellant had used the burner a portion of the time during the nearly three and one-half days he worked for appellee before his injury. Appellant emphasizes the fact that before the day of his injury he had worked mainly on parts of the lawn which were smooth and had not moved the burner over the rougher ground back of the house. Appellant testified that on either the second or third day he removed the ashpan by unhooking the wires by which the pan was suspended from the basket. He then emptied the ashes from the pan and hooked it back on as close as he could to the bottom of the basket, so that the edges of the pan were 1 to 3 inches below the basket.

Lowe testified, and his evidence is plain, that before he and appellant moved the burner shortly prior to appellant's injury,

he told appellant the pan was so full it started a fire every time the burner was moved, and suggested that they empty the pan. Appellant then agreed that the pan should be emptied and went to help Lowe move the burner to the ash bed for that purpose. For some time up to then Lowe had been moving the burner himself. The fair inference is that appellant assisted in moving it on this occasion because the basket was about full of burning leaves, the pan full of ashes, and the ground was rough and covered with leaves. Appellant testified that when they started to move the burner he knew the ground was rough and lots of leaves were there. The pan had not previously been emptied on that day, although the burner was in use much of the time. The leaves had not been raked from the ground over which the two men moved the burner. Appellant testified that the little ditch that the wheels of the burner struck was not as deep as some of the holes he had stepped in earlier that afternoon.

Lowe testified that at about one o'clock in the afternoon on the day of the injury some fire had fallen out of the burner and was burning some leaves on the ground; that appellee noticed this and directed Lowe to put out the fire.

We conclude that the evidence was insufficient to warrant a finding of negligence on appellee's part in any of the respects claimed. It may be conceded that the burner, like most incinerators and stoves, was not an absolutely safe appliance. However, an employer is not obliged to furnish the latest, best, and safest devices that will eliminate all possibility of danger. He is required only to furnish equipment that is reasonably safe and suitable. 35 Am. Jur. 604, 605, sections 175, 176; 39 C. J. 329, section 449. We think appellee did not violate her legal duty by furnishing appellant the burner.

Neither was appellee under the duty to warn appellant of danger in the use of the burner. Any danger in using this device was as evident to appellant as to appellee. There is no duty to warn of open and obvious dangers, matters of common knowledge, or the operation of natural forces, in the performance of simple tasks. Meyers v. Bennett Auto Supply Co., 169 Iowa 383, 151 N. W. 444; Haskell v. Kurtz Co., 181 Iowa 30, 39, 162 N. W. 598, L. R. A. 1917F 881, and cases cited; 35 Am. Jur. 580, section 148; 39 C. J. 499, 500, section 612.

Certain dangers naturally inhered in the work appellant was doing. These were risks ordinarily and normally incident to that kind of work. Appellant must be held to have assumed all such risks not resulting from appellee's negligence. Laws v. Richards, 210 Iowa 608, 611, 231 N. W. 321, and cases cited; Swaim v. Chicago, R. I. & P. R. Co., supra; 35 Am. Jur. 722, section 299; 39 C. J. 705, section 908.

The judgment is—Affirmed.

All JUSTICES concur.