## JEAN McDONALD v. ROBERT M. FRYBERGER AND ANOTHER.[1]

February 9, 1951.

No. 35,254.

*Louisell & Louisell* and *David W. Louisell,* for appellant.
*Dancer, Montague, Applequist, Lyons & Spang,* for respondents.

CHRISTIANSON, JUSTICE.

Plaintiff appeals from a judgment entered in a personal injury action after the trial court had granted defendants' motion for judgment notwithstanding the jury's verdict.

Defendants own and maintain their home in the city of Duluth. On July 9, 1948, they employed plaintiff, a woman 65 years of age, as a domestic servant in their home. Plaintiff commenced work in defendants' home the following day. Shortly before plaintiff's employment, defendants had remodeled their kitchen. In the process, new kitchen cabinets were installed. With the exception of the particular cabinet involved here, all the cabinets were fastened to the kitchen walls when installed. Because defendants contemplated

---

[1]Reported in 46 N. W. (2d) 260.

possibly making a further rearrangement of their kitchen fixtures, they did not have the cabinet in question fastened to the wall.

The cabinet in question was a Youngstown steel base cabinet, 36 inches high, 27 inches wide, and 24 inches deep, weighing about 103 pounds. At the time of the accident it occupied a corner position in defendants' kitchen adjacent to an electric range. It had four drawers of equal depth, with the bottom drawer set 4 inches above the floor because of a foot recess 4 inches high and 4½ inches deep extending across the front of the cabinet. The cabinet was not moved while plaintiff was working in defendants' home, and plaintiff did not know that it had not been fastened to the kitchen wall. A wall cabinet consisting of three shelves was located immediately above the base cabinet in question. Plaintiff could not reach higher than six feet because she is but five feet tall. She weighed 115 pounds.

On the morning of July 29, 1948, plaintiff pulled out the bottom drawer of the base cabinet in question about 8 or 12 inches to test the strength of the drawer itself and to determine whether it would hold her. She then pushed the drawer in until it protruded about four inches, placed the toe of her right foot diagonally against the right front corner of the drawer, and stepped up on the drawer to put some bowls on the top shelf of the wall cabinet immediately above the base cabinet. The top shelf was approximately 6 feet, 2 inches, from the kitchen floor. The cabinet immediately fell forward, knocking plaintiff to the floor and tipping over on top of her. As a consequence, she was injured.

The floor of the kitchen was new. Plaintiff testified that it had been waxed sometime prior to July 29, 1948. However, there is nothing in the record to justify a finding that the floor was slippery or that its condition contributed to the accident. Defendants did not have a stepladder or step stool for their kitchen. There were, however, four hardwood kitchen chairs located in the dinette area of the kitchen which plaintiff had used previously to reach the high shelves in the kitchen. However, she testified on this occasion: "I started into the dinette there to get a chair, and the floor is

slippery and I decided no, I am not climbing around on a chair any more than I have to."

The record discloses that the Youngstown steel base cabinet comes equipped with two wood screws about 1½ inches long with which it can be fastened to the wall and that there are two holes behind the top drawer in the back of the cabinet to accommodate such screws. The manager of the kitchen appliance department of the Duluth store where defendants purchased their Youngstown cabinets testified that out of the 40 or 50 such cabinets he had personally installed there were about 50 percent that were not fastened to the wall. He said that it was entirely up to the customer; that some people want them installed permanently, and others want them so they can be moved around. A witness called by plaintiff, on the other hand, testified that he had installed 150 such cabinets in the Duluth area and that he did not recall having made an installation without fastening the cabinets to the wall. The purpose of fastening cabinets to the wall is to prevent objects from falling between and behind the cabinets and to provide a smooth and level working surface. Frequently as many as five cabinets are installed side by side. Occasionally, such cabinets are placed in the middle of a kitchen as a "working island." It is conceded by both parties that only light objects were kept in the drawers of the cabinet in question and that a weight or pressure in excess of 30 pounds placed upon the front end of the bottom drawer of an empty cabinet such as this when pulled out practically all the way will cause the cabinet to tip forward.[2]

---

[2]The mathematical computations appearing in plaintiff's brief demonstrate that if the bottom drawer of a cabinet so constructed were pulled out 22 inches the weight or force required to be applied to the top front end of the drawer to tip the cabinet forward would be 29.97 pounds; that a weight or force of 48.13 pounds would be required if the drawer were pulled out 12 inches; and 93.44 pounds if it were out 4 inches. The computations of plaintiff's counsel assume an empty cabinet with no obstruction to the forward movement of the cabinet. They were calculated in accordance with the applicable laws of physics and appear to be mathematically correct.

The jury rendered a verdict in favor of plaintiff. Thereafter the trial court, upon defendants' motion, granted defendants judgment notwithstanding the verdict. The court in its memorandum, made a part of its order granting defendants judgment, stated that in its opinion there was no showing of negligence on the part of defendants.

On appeal, plaintiff assigns as error the trial court's order granting defendants judgment notwithstanding the verdict and contends that whether defendants were negligent or not was a question of fact for the jury in the instant case.

Plaintiff contends that defendants violated their duty as masters to provide a safe place to work and reasonably suitable and safe appliances to work with, and that the jury was justified in finding defendants negligent in the following respects:

(1) Failing to have the cabinet fastened to the kitchen wall;

(2) Failing to inform plaintiff of this fact; and

(3) Failing to furnish plaintiff a footstool or other suitable instrumentality to enable her to reach the top kitchen shelves.

Defendants contend that their kitchen chairs provided a suitable instrumentality to enable plaintiff to reach the shelf in question and that the evidence does not justify a finding of negligence on their part in any of the respects claimed by plaintiff. They also contend that plaintiff was guilty of contributory negligence as a matter of law and assumed the risk incidental to her use of the cabinet drawer as a footstool.

We find it necessary to consider only the question whether plaintiff has established negligence on the part of defendants.

Negligence must be predicated upon what one should have anticipated and not merely on what happened. As this court stated in Despatch Oven Co. v. Rauenhorst, 229 Minn. 436, 447, 40 N. W. (2d) 73, 81:

"* * * It is axiomatic that an act or omission is not negligent unless the actor has knowledge or notice that it involves danger to others. Duty to exercise care is dictated and measured by the

exigencies of the occasion as they are or should be known to the actor; and if no harm should be anticipated as a consequence of the act there is no negligence. Rue v. Wendland, 226 Minn. 449, 33 N. W. (2d) 593; 4 Dunnell, Dig. & Supp. §§ 6970, 6972. As said in Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641:

"'* * * If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all; * * *.'

"As a corollary, it follows that ordinary care does not involve forethought of extraordinary peril. Greenwald v. Northern States Power Co. 226 Minn. 216, 32 N. W. (2d) 320."

The cabinet in question was a standard manufactured cabinet used in kitchens for the storage of kitchen articles and supplies. Its top provides a smooth working surface. It appears from the evidence that such a cabinet, whether fastened to the wall or not, is a perfectly safe instrumentality for the purpose for which it was intended and maintained by defendants. No defect in the cabinet itself is claimed. It only became dangerous when it was put to an improper use by plaintiff for a purpose for which it was neither constructed nor maintained. If it may be said to have caused injury to plaintiff, it was only because of her attempt to use it for an improper purpose. The use plaintiff was making of the cabinet at the time in question was not one that defendants could reasonably have anticipated or foreseen. As stated in 3 Labatt, Master and Servant (2 ed.) § 921:

"* * * 'Although it is a master's duty to use due care to furnish his servants tools and appliances suitable for the purpose for which they are provided, he owes them no such duty when they put his tools to uses for which they were not intended.' It is 'not negligence to omit a precaution applicable only to a situation which did not in fact exist.' It is universally agreed, therefore, that an employer is not liable where the servant's injury was not caused by any defect in the appliance which affected its safety when it was used

in the ordinary manner and for the purposes for which it was intended.

\* \* \* \* \*

"\* \* \* The mere fact that an appliance happens to be placed where it can be used for the performance of the work which the injured servant undertook to do with it does not warrant the inference that the master intended that he should use it as he did, or the inference that he was in fault in not knowing that he was likely to do so. Any other rule would involve the consequence that every master who leaves any implement upon his premises, which his servants cannot safely use for every purpose which suits their convenience, sets a trap for them."

The foregoing rule was applied by this court to a factual situation similar to that presented here in the case of Hahn v. C. M. & St. P. Ry. Co. 157 Minn. 354, 196 N. W. 257. There, an employe of a railroad was riding on one of its locomotives at night pursuant to his employer's directions to deliver a message to the tower operator. As the locomotive approached the tower at a speed of about five miles per hour, the employe stepped off onto a box housing some of the railroad's machinery and was injured. In general appearance the box resembled a platform. However, it was too short to be safely used for that purpose. In an action for his personal injuries, the employe contended that the employer was negligent because the so-called platform was not level, was slippery from frost, and was not lighted. He also contended that the employer was negligent in failing to warn him of its unsafe condition and the dangers incident to alighting thereon. At the conclusion of the testimony, the trial court directed a verdict for the employer. On appeal this court affirmed, holding that the employer could not be held liable for negligence where employe's injury was caused by use of an instrumentality for a purpose which employer could not have reasonably foreseen.

Likewise, this rule has been applied in cases from other jurisdictions analogous on their facts to the instant case. See, Brown v.

Hunt & Shuetz Co. 163 Iowa 637, 145 N. W. 310; Campbell v. Southern Pacific Co. 120 Or. 122, 250 P. 622; Manche v. St. Louis Basket & Box Co. (Mo.) 262 S. W. 1021; Schmidt v. Leistekow, 6 Dak. 386, 43 N. W. 820; Stewart v. Kroger Grocery, etc., Co. 198 Miss. 371, 21 So. (2d) 912.

There is nothing in the record here to show that plaintiff or anyone else had previously used the cabinet drawer as a step stool. Such a use was not authorized by defendants, and at no time did they have reason to expect that plaintiff would attempt so to use it. It appears that there were readily available four wooden chairs of solid construction for such use. In fact, plaintiff admitted that she previously had used these chairs to reach the higher shelves in defendants' kitchen. The record does not establish as a fact that plaintiff could not safely have used one of these chairs on this occasion or that she ever requested defendants to provide her with some other means of reaching the upper kitchen shelves. Chairs provide a suitable instrumentality for this purpose and are frequently so used. A master is not bound to furnish the best and safest appliances obtainable. See, 4 Dunnell, Dig. & Supp. § 5893, and cases there cited; McGivern v. N. P. Ry. Co. (8 Cir.) 132 F. (2d) 213; Anderson v. Sheuerman, 232 Iowa 705, 6 N. W. (2d) 125.

As stated in Blomberg v. Trupukka, 210 Minn. 523, 526, 299 N. W. 11, 13:

"* * * An act which exposes another to risk of injury only by his failure to conform to those rules of conduct for his own safety *with which he might reasonably be expected to comply* does not violate the standards of due care." (Italics supplied.)

Thus, where, as here, a standard kitchen appliance, reasonably safe for its intended purpose, is put to an improper, unauthorized, and unnecessary use by a domestic servant, and such use is one which the master cannot be expected to have foreseen, the master is not negligent or liable for injuries to the servant resulting from such improper use.

The record before us fails to establish negligence on the part of defendants in any of the respects claimed. The judgment for defendants should be affirmed. Cf. Pepperling v. Emporium Merc. Co. Inc. 199 Minn. 328, 271 N. W. 584; Blomberg v. Trupukka, *supra;* Callahan v. City of Virginia, 230 Minn. 55, 40 N. W. (2d) 841; Meagher v. Hirt, 232 Minn. 336, 45 N. W. (2d) 563.

Affirmed.