[Civ. No. 19251.   Second Dist., Div. Three.   June 1, 1953.]

HARRY C. HAMPTON, Respondent, v. PACIFIC ELEC-
   TRIC RAILWAY COMPANY (a Corporation), Ap-
   pellant.

C. W. Cornell, O. O. Collins, John R. Allport and Clyde C. Beery for Appellant.

John M. Ennis and Robert M. Holstein for Respondent.

SHINN, P. J.—Plaintiff, about 65 years of age, for many years employed by the Pacific Electric Railway as a conductor, was injured when he fell in descending from a loading platform of the company at its station in Azusa. Suing under the Federal Employers' Liability Act he was awarded substantial damages in a jury trial and following denial of its motion for a new trial the defendant company appeals.

The sole question is whether the evidence and proper inferences therefrom, viewed in the light most favorable to plaintiff, were such as to justify the determination by the jury that defendant failed to provide plaintiff with a safe place to work, or in other words, that it was negligent with respect to that duty.

We can give a better recital of the facts by use of the accompanying photograph. It shows the major portion of the south side of the building. The door seen in the picture, which we will refer to as the south door, leads into the room of the stationmaster. To the west is the freight room. At the west end of the freight room is a door which was locked with an inside bolt. On the north side of the building is a single track for use in loading and unloading cars. Also on the north side of the building is a broad platform, the height of the loading platform, from which loading and unloading may be done. This platform extends easterly from the westerly loading platform and leads into a ramp which meets the ground level near a door which is opposite the south door. The floor of the loading platform seen in the picture at the west end of the freight room is approximately 3 feet 9 inches above the ground. A short distance above

the ground is a stringer, 4 inches wide and 12 inches deep. On the day of the accident plaintiff reached the north side of the shed in a box motor attached to a boxcar. He alighted onto the platform, went to the west door of the freight room, found it locked, went to the south edge of the loading platform, eased himself down onto the stringer, placing one foot thereon, and in his attempt to reach the ground fell heavily when his foot slipped off the stringer.

There is no conflict of authority as to the applicable principles of law. Defendant had no liability except for negligence, and that has been the question in all the cases under the Federal Employers' Liability Act. ▉ The usual rules of negligence apply. In the cases where the employer is charged with a failure to provide the employee with a safe place to work, the question usually is whether an occurrence of the nature of that which caused injury to the employee was one known to or within the reasonable anticipation of the employer, that is to say, whether he knew or should have known that the conditions, facilities or instrumentalities provided were likely to be used in the manner in which they were used and which resulted in the injury.

▉ It is axiomatic, as defendant says, that where the conditions and facilities of employment provide safety when made use of for the purpose for which they were intended, an employer cannot be held guilty of negligence in failing to provide against unexpected uses which would involve danger. This is the text of the cases cited by defendant. (*Brady* v. *Southern Ry. Co.*, 320 U.S. 476, 483 [64 S.Ct. 232, 88 L.Ed. 239, 245]; *Campbell* v. *Southern Pac. Co.*, 120 Ore. 122 [250 P. 622]; *Hahn* v. *Chicago M. & St. P. Ry. Co.*, 157 Minn. 354 [196 N.W. 257]; *McDonald* v. *Fryberger*, 233 Minn. 156 [46 N.W.2d 260]; *Reynolds* v. *Atlantic Coast Line R. Co.*, 336 U.S. 207 [69 S.Ct. 507, 93 L.Ed. 618, 619, 620].)

▉ We agree with defendant that when the station was constructed it was doubtless anticipated that employees would use the ramp in descending from the platform and that it was not reasonably to be anticipated that they would descend by means of the stringer, which was installed solely as a protection against injury by freight trucks. Under these circumstances the duty of the company would have been fulfilled, inasmuch as it was not negligence to overlook what was not reasonably foreseeable; but if the employees had developed the practice of descending from the platform by stepping onto the stringer, and if the company had knowl-

edge of it, the question of foreseeability disappeared. Therefore, if the company had knowledge that the stringer was commonly used as plaintiff was using it, and that the ramp was not used in descending from the platform, it was under a duty to take reasonable measures to halt the practice or to remedy any conditions which rendered use of the stringer unsafe, just as it had a duty to provide a safe manner of getting down in the first instance.

The rule is stated in 39 Corpus Juris, page 441, as follows: "Where the place of work, machinery, or appliances is reasonably safe and suitable for the purpose for which it was intended, a servant cannot hold his master liable for personal injuries resulting from its inappropriate, unauthorized, unnecessary, careless, improper, or unusual use or test. But when an appliance is improperly used with the knowledge of the master, it makes no difference, so far as his liability for such improper use is concerned, whether or not it was originally built for such purpose. . . ." (56 C.J.S., p. 1006; *Kaumans* v. *White Star Gas & Oil Co.*, 92 Utah 24 [63 P.2d 231, 236].)

It was clearly a question of fact whether the evidence brought the case within the operation of this rule. There was evidence of the following facts: When an employee found the west door of the freight room locked from the inside it was necessary to go to the stationmaster's room and from there enter the freight room and unbolt the west door; the north door where the ramp was located was kept locked and plaintiff had no key to that door; the employee, then, desiring to enter the freight room could descend from the platform, as plaintiff did, in order to go to the main south door, or he could go to the north side of the building, walk along the platform, down the ramp, then to the sidewalk at the east end of the building and thence along the south side to the main door. This would be a distance of from 120 to 150 feet. Evidence was given by several trainmen as to the customary practice of employees when they found the west door of the freight room locked. Plaintiff had been working on the Azusa route for about five months. He had descended from the platform in the same manner as on the day of his injury "five, ten or twenty times"—"15 or 20 times"; he did not recall ever having used the ramp. A motorman who had worked the run for a year, and at different other times, and who was working with plaintiff on

the day of the injury, testified that the north door was kept locked, the employees had no key, and that the custom and practice, when the west door of the freight room was found locked, was to get off the platform as plaintiff had done, and that he himself had got down from the platform in that manner. There were no steps to use to get off the platform. Another witness who had worked with the company for 16 years testified that he descended from the platform in the same place plaintiff did by stepping onto the stringer. Still another witness who had been a conductor with the company for 33 years and who had worked around the Azusa station "quite a lot," and one stretch for two years and two months, testified that it was his practice to alight from the platform by climbing down as plaintiff had done; that the north door was locked most of the time and he had no key. He also testified that the stringer where plaintiff alighted was "pretty badly worn and battered"; "it is worn here [indicating] by continuous use of the trainmen climbing down there." There was thus evidence that it was the common practice for trainmen to get down from the platform by stepping onto the stringer and from there to the ground, and that it was not the practice of those desiring to go from the platform to the south door to go down the ramp on the north side and around the east end of the building.

It was fairly to be inferred that the company knew of the described practice. In fact, learned counsel for defendant properly, we think, do not question the sufficiency of the evidence to support the implied findings that the practice existed as described, and that the company had knowledge of it.

The parties discuss at length the case of. *Wilkerson* v. *McCarthy,* 336 U.S. 53 [69 S.Ct. 413, 93 L.Ed. 497], reversing the Supreme Court of Utah, 112 Utah 300 [187 P.2d 188]. Wilkerson sued under the Federal Employers' Liability Act for injuries sustained when he fell into a repair pit maintained by a railroad beneath its tracks. The question was whether there was a practice among the employees to cross the pit on a board as Wilkerson attempted to cross. Guard chains around the pit were maintained by the defendants. In a thorough and forceful opinion the Supreme Court of Utah held there was insufficient evidence to prove the alleged practice, and that maintenance of the guard chains acquitted defendants of the charge of negligence. The United States Supreme Court, the Chief Justice and one Justice dissenting, held there was evidence sufficient to support a finding that

the custom existed and that the adequacy of the precautions taken was one of fact. The courts were in agreement as to the law. They disagreed only as to what constituted substantial evidence as distinguished from a scintilla of evidence. The Utah court said (p. 195 [187 P.2d]): "It must be conceded that if defendants knew or were charged with knowledge that switchmen and other workmen generally in the yard were habitually using the plank as a walkway in the manner claimed by plaintiff, then the safety inclosure might be entirely inadequate, and a jury question would have been presented on the condition of the board and the adequacy of the enclosure." The reversing court quoted this passage and said (p. 504 [93 L.Ed.]): "We agree with this last quoted statement of the Utah court, and since there was evidence to support a jury finding that employees generally had habitually used the board as a walkway, it was error for the trial judge to direct a verdict in favor of respondents."

It would serve no good purpose to expatiate upon settled principles of law which are not even in disagreement in the case. It cannot be said as a matter of law that the company fulfilled its duty by providing the ramp as a safe means for getting down from the platform when it was known that in common circumstances the employees climbed down by means of the stringer.

Since defendant does not question that the law is as stated, and does not challenge the sufficiency of the evidence to prove the alleged customary practice of its employees, and its knowledge thereof, nothing remains to support a claim of error. Whether use of the stringer, as described, involved unreasonable risk, and the company with knowledge of the use was negligent in permitting the practice of the employees to continue, were questions for the jury.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied June 19, 1953, and appellant's petition for a hearing by the Supreme Court was denied July 28, 1953. Spence, J., was of the opinion that the petition should be granted.