## PAUL LOMMEN v. ADOLPHSON & PETERSON CONSTRUCTION COMPANY.

168 N. W. (2d) 673.

May 29, 1969—No. 41378.

*Meagher, Geer, Markham & Anderson, Mary Jeanne Coyne,* and *O. C. Adamson II,* for appellant.

*Lindquist & Vennum, William C. Mortensen,* and *Kenneth F. Kirwin,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

ROGOSHESKE, JUSTICE.

Appeal from an order of the district court denying defendant's alternative motion for judgment notwithstanding a jury verdict or a new trial.

On January 13, 1964, plaintiff suffered serious injuries as the result of a fall from a scaffold while installing a folding partition during the construction of the Minnetonka West Junior High School gymnasium. The folding partition was designed to operate upon a track supported by a large, steel, I-shaped, double bar joist which extended across the full

80-foot width of the ceiling of the gymnasium approximately 20 feet above the floor. Defendant was the general construction contractor and had subcontracted the furnishing and installation of the partition to Mahin-Walz Company, which in turn had subcontracted the actual installation of the partition to plaintiff's employer, the Jerry Fisher Company.

To hide the steel bar joist from view and to aid in soundproofing, defendant was required to "box in" the bar joist by covering it with plywood panels. This was to be accomplished by constructing a framework of two-by-fours to which the plywood panels would be nailed. Two-by-fours, 16 feet in length, were ram-set[1] horizontally, wide side down, inside both the top and the bottom flanges of the I-shaped bar joist. To keep these two-by-fours firmly in place for ram-setting, two-by-fours about 3½ feet long were wedged between them vertically at about 4-foot intervals. After the horizontal two-by-fours were secured to the steel flanges with ram-set spikes, the vertical wedges were removed and vertical two-by-fours about 4 feet in length, which extended about 4½ inches below the bottom of the bar joist, were then permanently nailed, wide side out, to the outside edge of the horizontal two-by-fours at 16-inch intervals. The plywood panels were then nailed to the vertical two-by-fours.

When the boxing-in had been completed to within 20 feet of the north wall, defendant's carpenters had to stop until the remainder of the track assembly and the partition had been installed. Eight to ten feet of horizontal two-by-fours extended beyond the point where the plywood sheathing ended, both above the bottom flange and below the top flange of the bar joist.

These visible horizontal two-by-fours could not be permanently ram-set to the bar joist because the clamps which were to hold the remaining track assembly to the bar joist when it was installed had to be fastened to the steel bar joist beneath the two-by-fours. In order to keep these two-by-fours from warping before they could be ram-set, defendant's carpentry foreman wedged the 3½-foot two-by-fours, narrow side

---

[1] A ram set is a device which shoots a spike through a two-by-four and into steel or concrete.

out, vertically between them, one of the vertical two-by-fours being placed about 4 feet beyond the point at which the plywood sheeting ended. Without moving the scaffold upon which he was working, so that he could reach the top as well as the bottom of this wedge, defendant's foreman leaned out from the scaffold and, after jamming the wedge into place, secured it only with a small sixpenny nail, toe-nailed at its base.

Plaintiff, intending to throw a rope over the bar joist so that the heavy crate containing the partition could be moved into place without damaging the gymnasium floor, climbed the end of a tubular steel scaffold placed under the bar joist. He stopped at a point where the top of the scaffold was near his waist and threw the rope over the bar joist. The rope did not fall far enough over the joist for the workmen on the floor to reach it. Thereupon, plaintiff reached up to feed it over the joist by hand and, in doing so, with his right hand grabbed the vertical two-by-four which had been placed about 4 feet beyond the plywood sheeting. The top of the two-by-four moved out and plaintiff fell from the scaffold, sustaining substantial injuries.

He brought suit against defendant, alleging that it had been negligent in its use of the temporary vertical wedge which he sought to use as a "handhold." Plaintiff recovered a jury verdict of $15,000. Defendant moved alternatively for judgment notwithstanding the verdict on the grounds that (1) defendant had not violated any duty which it had toward plaintiff, (2) plaintiff had failed to establish that any negligent act by defendant was the proximate cause of plaintiff's injuries, (3) plaintiff was contributorily negligent as a matter of law, and (4) that he assumed the risk as a matter of law, or for a new trial. This motion was denied and defendant appeals.

On appeal defendant makes three basic arguments: (1) That as a matter of law defendant had no duty to foresee that someone might use the temporary wedge as a handhold; (2) that the trial court erred in not expressly instructing the jury that plaintiff, in order to recover, must have established that defendant should have foreseen that someone was likely to use the wedge as a handhold; and (3) that plaintiff in using the wedge as a handhold was contributorily negligent as a matter of law.

Defendant argues here, as before the trial court, that its employees had no duty to anticipate that someone would use this "obviously temporary" wedge as a handhold. Plaintiff, on the other hand, argues that defendant's foreman was negligent in using only one small nail to secure this wedge, which deceptively appeared to be a part of the permanent construction, when he knew the partition construction crew would be working in that area.

Since it is undisputed that defendant's employees knew that the partition contractor's employees would be working in close proximity to the wedge while installing the folding partition, resolution of the issue of foreseeability of the risk depends upon whether the evidence permitted the jury to conclude that defendant's foreman should have reasonably foreseen that one of these employees would assume that the wedge was a permanent part of the construction and would use it as a handhold. Clearly, if the evidence does not permit that conclusion, defendant's argument is correct, for its employees had no duty to foresee any improbable or unusual use of obviously incomplete or temporary construction. Italiano v. Jeffrey Garden Apts. Section II, 3 App. Div. (2d) 677, 159 N. Y. S. (2d) 338, affirmed, 3 N. Y. (2d) 977, 169 N. Y. S. (2d) 737, 147 N. E. (2d) 245. See, McDonald v. Fryberger, 233 Minn. 156, 46 N. W. (2d) 260.

Viewing the evidence in the light most favorable to sustain the jury's verdict, as we must, there is sufficient evidence from which the jury could reasonably conclude that the wedge did appear to be a part of the permanent construction and that construction workers commonly do use permanent studs as handholds. Plaintiff testified that not only was the use of vertical studs between horizontal two-by-fours a common method of permanent construction of framework for plywood sheeting but also that it was the only type with which he was familiar. Furthermore, it is a fair inference from the testimony of defendant's superintendent and foreman that this was a common method of permanent construction, especially in view of the foreman's failure to deny that such studs were left in the other part of the permanent construction which had been enclosed with plywood sheeting. Added to this is the testimony of several witnesses that it was customary for workmen to

use such vertical studs as handholds. Upon this evidence we cannot say, as defendant urges, that as a matter of law the jury could not conclude that defendant and its employees should have foreseen the danger and taken steps to guard against it either by securing the wedge with more than one nail or by giving a warning that it was not a part of the permanent construction.

Defendant also raises for the first time on this appeal a claim that the trial court erred in not giving a specific instruction on the issue of foreseeability. The only instruction given by the trial court on the issue of defendant's negligence essentially followed Minnesota Jury Instruction Guides, Instruction 101:

"Negligence is the failure to use reasonable care. * * * [R]easonable care is that care which a reasonable person would use under like circumstances. Negligence is the doing of something which a reasonable person would not do, or the failure to do something which a reasonable person would do, under like circumstances."

This instruction fully and fairly states the general rule of negligence. [2] However, under the circumstances of this case, had defendant properly requested a specific instruction on the issue of foreseeability, a trial court would have been well advised to grant it to aid the jury's understanding of the defendant's theory of the case.[3] Defendant's oral request which the court refused to give was couched in these words:

"* * * [D]efendant owed no duty incident to the condition of its uncompleted work to have that work in a condition so that it could be utilized by the employer of the plaintiff and by the plaintiff in the accomplishment of his work on behalf of his employer."

---

[2] See, Erickson v. Quarstad, 270 Minn. 42, 132 N. W. (2d) 814; Klingbeil v. Truesdell, 256 Minn. 360, 98 N. W. (2d) 134; Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 1, 68 N. W. (2d) 873.

[3] See, Luke v. City of Anoka, 277 Minn. 1, 151 N. W. (2d) 429; Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. *supra*; Hartmon v. National Heater Co. 240 Minn. 264, 60 N. W. (2d) 804; Christianson v. Chicago, St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640.

If this was in fact a request for a foreseeability instruction, as defendant now argues, it was not so understood by the trial judge. In any event, it was properly refused for its effect would have been to direct a verdict for the defendant on the issue of its negligence, as the trial judge observed in response to the request. Obviously, the requested instruction ignored evidence which supported plaintiff's claim that the wedge could reasonably be assumed to be a part of the permanent construction. Most importantly, however, it is clear that defendant was not prejudiced by the trial court's failure to give a specific instruction on foreseeability. We have no doubt that the jury understood this issue, since both counsel fully, clearly, and vigorously addressed themselves to it in closing arguments which explained and were wholly consistent with the court's general instructions.

Finally, defendant argues that plaintiff was contributorily negligent as a matter of law in that he should have examined the vertical wedge more carefully before using it and should have seen, had he looked, that the wedge differed substantially from the permanent vertical two-by-fours used beneath the plywood sheeting. The evidentiary basis for this argument is no more persuasive than that in support of defendant's argument on the foreseeability issue. The evidence with respect to both raised jury issues which were adequately submitted and permissibly and justifiably resolved by the jury.

Affirmed.