The State v. Rainsbarger.

AFFIRMED.

— —

THE STATE v. RAINSBARGER.

1. **Criminal Practice** : CONTINUANCE : SICKNESS OF DEFENDANT'S COUNSEL : DISCRETION. A motion by defendant in a criminal case for a continuance, based on the alleged illness of some of his counsel, is addressed to the discretion of the trial court; and the ruling of such court will not be reversed on appeal, unless it is made to appear that such discretion has been abused, with prejudice to defendant; and the facts of this case (see opinion) show neither abuse of discretion nor prejudice.

2. —— : —— : COUNTER-AFFIDAVITS. While it is true that an application for a continuance, based on the absence of a witness, may not be resisted by counter-affidavits contradicting the statement of facts which it is alleged the witness will swear to ( *State v. Dakin*, 52 Iowa, 395 ; *State v. Scott*, 44 Iowa, 93), the rule is entirely different as to the statement of facts showing diligence, and the like ; and, as to these, counter-affidavits are admissible. ( Compare *State v. Wells*, 61 Iowa, 629.)

3. ——— : KEEPING JURY TOGETHER : DISCRETION OF COURT. A request, by defendant on a criminal charge, that the jury be placed in the care of officers, and be not permitted to separate, is addressed to the sound discretion of the trial court ( Code, sec. 4434 ; *State v. Felter,* 25 Iowa, 67 ) ; and, before the action of the court in refusing such request will be interfered with on appeal, abuse of such discretion must be shown, and prejudice resulting therefrom ; which is not done in this case. ( See opinion for facts.)

4. ——— : USING WITNESS NOT NAMED ON INDICTMENT : NOTICE TO DEFENDANT : SUFFICIENCY. The state was permitted to examine a witness whose name was not indorsed upon the indictment, as required by Code, section 4293, upon showing notice to defendant as required by Code, section 4421; but the notice stated the residence of the witness to be Kansas City, Kan., whereas it proved to be Kansas City, Mo.; and the statement in the notice of what the state expected to prove by the witness varied somewhat from what was actually proved by him. But *held* that this was no ground for reversal, since it does not appear that defendant was in any manner prejudiced by the irregularities. ( See Code, sec. 4538.)

5. Homicide : EVIDENCE : COMPETENT, THOUGH WEAK. Upon a trial for murder, it was shown that a bottle usually used to contain a certain kind of bitters was found in a buggy, not far from where the body of the deceased was found, and that, when last seen alive, he was riding in the buggy. *Held* that it was competent to prove by a witness that he had, on the evening before, sold defendant a similar bottle containing bitters, as tending to connect defendant with the crime.

6. ——— : ——— : MOTIVE. Evidence which tends to show the relations between the defendant and the deceased, and a motive for the homicide with which defendant is charged, is admissible against him ; and such was the evidence objected to in this case. ( See opinion.)

7. ——— : ——— : WEAPON IN DEFENDANT'S POSSESSION. Evidence that defendant had, before the homicide, a pair of "knuckles" was admissible against him, where the wounds upon the decedent were such that they might have been made by such weapons.

8. ——— : ——— : IDENTIFICATION OF BUGGY BY ITS "RATTLE." Where, in a case of homicide, the identification of a certain buggy as being that of the deceased was material, *held* that the testimony of a wagon-maker, to the effect that he knew defendant's buggy, and that he knew the one in question to be his by the peculiar rattle of its wheels, was competent.

9. ——— : EXPERT TESTIMONY : WHAT IS NOT. In a case of homicide, the defendant, after stating hypothetically the character of the wounds, asked a witness, who was a physician, how the wounds were probably produced. *Held* that the question was properly excluded, because it called for an opinion on matters not peculiarly within the knowledge of the medical profession.

10. ———— : EVIDENCE TO SUPPORT VERDICT OF GUILTY. The deceased was last seen alive riding in a buggy. He was found dead under such circumstances as to suggest that he came to his death through an accident connected with the management of the horse and buggy ; and this was the theory of defendant. But the theory of the state was that defendant killed him, and then disposed the surroundings in such a way as to indicate death by accident. The jury found defendant guilty ; and, as there was no such lack of evidence to support the verdict as to lead to the conclusion that it was the result of passion and prejudice, *held* that it could not be reversed on appeal.

11. **Instructions** : REPETITION NOT REQUIRED. It is not error to refuse an instruction asked when the substance of it is embodied in those given.

*Appeal from Marshall District Court.*—Hon. D. D. Miracle, Judge.

FILED, MARCH 10, 1888.

DEFENDANT was convicted for the murder of Enoch Johnson and sentenced to imprisonment for life in the penitentiary. He now appeals to this court.

*Brown & Carney* and *C. C. Cole*, for appellant.

*A. J. Baker*, Attorney General, for the State.

BECK, J.—I. The numerous objections to the rulings of the district court will be considered in the order of their discussion by counsel. While, perhaps, this order is not wholly in accord with the manner of presentation of the case which meets our preference, yet, as it is followed by counsel on both sides, it is more convenient to pursue it in our discussion of the case.

II. During the term at which defendant was tried, a motion for a continuance, on the ground of the illness of two of his counsel was overruled. 1. CRIMINAL practice: continuance: sickness of defendant's counsel: discretion. The case had been pending for more than eighteen months, and had been continued two or three times ; once at least, with the consent of the state. The venue of the case had also been changed. Prior to the motion, and at the same term, the time for the commencement of the

trial was extended for nearly a month on the ground of the illness of defendant's counsel. More than two weeks before the time thus fixed for the trial, the attorney for the state, having information that an application for a continuance would be made, notified defendant in writing that the commencement of the trial at the time fixed would be insisted upon. The application for the continuance was made at least ten days before the day set for the trial. It is shown that, at the time the motion was made, defendant had other counsel in attendance upon the court. The counsel who were sick were not present. The sickness of defendant's counsel *per se* was not sufficient ground for the continuance, if, in the exercise of reasonable diligence, he could have been ready for trial. The district court was more familiar than we can be with all the facts and circumstances of the case tending to show the prior diligence of the defendant, his ability to prepare for trial after he was advised of the illness of his counsel, and whether his cause could be so presented by the counsel attending the court, and others whom he might employ, that he would obtain justice. In the exercise of sound discretion, based upon all facts within the knowledge of the judge, the court was required to rule on the application. There is nothing in the record before us authorizing the conclusion that this discretion was abused. Indeed, the trial vindicated the conclusion, which must have been reached by the court below, that defendant would suffer no prejudice by denying his application for the continuance; for it was conducted with great ability, and it is quite apparent that there could have been no failure of justice for want, on the part of counsel trying the case, of ability, zeal and thorough familiarity with the facts of the case and the law applicable thereto. We conclude that no error or prejudice is shown which resulted from the overruling of the motion for the continuance. See, as an analogous case supporting our conclusion, *State v. Stegner*, 72 Iowa, 13.

III. The attorney for the state filed an affidavit showing the facts of the service of the notice that he

2. ——: ——:  would urge the trial at the day fixed for it;
counter-affi-  that other counsel than those who were ill
davits.   were in the case; and probably some other
matters.    Defendant's counsel now insist that it was
error to permit this affidavit to be filed.    They claim
that no affidavits can be submitted in resistance to an
application for a continuance, and that this court has so
held.    But the decisions are to the effect that the state-
ment of facts which are expected to be proved by an
absent witness cannot be contradicted by counter-
affidavits.    State v. Dakin, 52 Iowa, 395 ; State v. Scott,
44 Iowa, 93.    The obvious reason for the rule is based
upon the provision of the statute to the effect that the
state may avoid the continuance by admitting that the
absent witness would testify as claimed in the affidavit
for the continuance.    At the trial the state may traverse
the facts stated, and introduce evidence contradictory
thereto, and if the state were authorized, upon the con-
sideration of the motion, to contradict the statement of
facts, it would, in effect, be the trial of an issue of fact
to the court upon which, if fairly tried, the defendant
should be permitted to introduce evidence, in support
of his affidavit, which would involve delay and great
inconvenience and unnecessary labor.    But as to facts
showing diligence and the like, the case is wholly dif-
ferent, and the same reasons do not apply thereto.    This
court has held that counter-affidavits, denying the
existence of popular excitement shown as a cause for a
continuance, may be received and considered.    State v.
Wells, 61 Iowa, 629.    It thus appears that allegations
of facts in an affidavit for a continuance, other than
those to which it is claimed an absent witness will tes-
tify, may be contradicted by counter-affidavits.

IV.    After the jury were impaneled, the defendant
asked that they be placed in the care of the officers,
3. ——: keeping  and that they should not be permitted to
jury together:  separate.    The ground of this request was
discretion of
court.    that, at a prior trial of one indicted for
the same homicide, a daily newspaper, published in the
city where the court was held, had commented on the

evidence in a manner prejudicial to defendant, and a repetition thereof was feared. The request was refused. This court has held, under the statute now in force applicable to the question (Code, sec. 4434), that the court, in the exercise of its discretion, may, in a case of the character of the one before us, permit the jury to separate under proper direction and admonition. *State v. Felter*, 25 Iowa, 67. The record fails to show abuse of discretion by the district court, or prejudice resulting to defendant from the refusal to grant his request. The court carefully, at proper times, admonished the jury not to read the newspaper accounts and discussion of the trial, and to observe other directions intended to guard them from influences which might have the effect to bias their minds. It is not shown that the jury disregarded these admonitions, or that any prejudice did result, or could have resulted, to defendant, from the action of the court in denying defendant's request.

V. The state was permitted to examine a witness whose name was not indorsed upon the indictment, as required by Code, section 4293, upon showing a notice to defendant, as required by Code, section 4421. Counsel for defendant insist that the requirements of this section were not observed, for these reasons:

4. ——: using witness not named on indictment: notice to defendant; sufficiency.

(1) The notice shows that the witness resided in Kansas City, Kan., and it appeared that he lived in Kansas City, Mo. (2) The notice shows that the state expected to prove by the witness that the sheriff had sent a telegraphic communication to defendant, requesting him to come to the sheriff, and that the defendant asked the witness his opinion as to what he supposed the sheriff wanted. The evidence showed that the deputy sheriff had sent a communication by telephone. In other respects the evidence did not differ from the statements of the notice. It is insisted that, on account of the differences pointed out, the evidence was erroneously admitted. The purpose of the statute is to secure to the accused such a knowledge of the evidence which will be given against him as will enable him to make preparation to

contradict or explain it, if either may be done. To this end the accused must be informed with sufficient certainty as to the witness who will testify against him, and the substance and effect of his evidence. The name of the witness and his place of residence should be given. But an omission to give his true place of residence cannot be reversible error, unless prejudicial. Under Code, section 4538, and frequent decisions of this court, errors which do not affect the substantial rights of defendant are not grounds for reversing the judgment. It is not made to appear that defendant was in any way misled or otherwise prejudiced by the error. So it is not shown that the statement in the notice, differing from the evidence in showing that the deputy sheriff had sent a communication by telephone, instead of a message by telegraph sent by the sheriff, wrought to defendant prejudice of any character or to any extent. If the state were required to produce evidence conforming in every important particular to the notice, the statute would defeat justice, when a noncompliance in unimportant matters would not prejudice the rights of the accused.

VI. The person for whose killing defendant was convicted was shown to have been riding in a buggy, in

5. Homicide: evidence; competent, though weak.

the night-time, when last known to be living. He was found dead, his body being some distance away from the buggy, and showing by unmistakable signs that death had resulted from violence. A wheel and other parts of the buggy were broken. A bottle of the character commonly used to hold bitters of a certain kind was found in the buggy. A witness was permitted to testify that he had sold defendant, the evening of the homicide, the same kind of a bottle, containing bitters. The evidence was objected to ; and it is now insisted that, as the identity of the bottle found in the buggy with the bottle sold to defendant is not shown, it did not tend to show that defendant was at or near the place of the homicide. But the evidence does tend to identify the bottle found

with the bottle sold defendant, in so far as that the bottles were alike, and contained the same kind of bitters. The evidence may be weak, but it cannot be denied that, unexplained, it does tend, in some degree, to show defendant's presence at the place. It was for the jury to determine its weight. Of its competency there can be no doubt.

VII. The defendant was surety for the deceased upon a bail-bond, requiring him to answer for a crime.

6. ——: ——: motive.

A witness was permitted to testify as to the reason inducing defendant to sign the bond; that defendant said the deceased had threatened to make an exposure of the criminal acts of defendant; that defendant had agreed to furnish deceased with money for his defense against the criminal charge and failed to do so; that the deceased had a policy of insurance upon his life, which defendant was to receive in consideration of money advanced to deceased, and to some other like matters. The admission of the evidence is made a ground of objection. It was rightly admitted. It served to show the relations of the parties, and to some extent a motive for the crime.

VIII. The same witness testified, against defendant's objection, that defendant had in his possession a pair of "knuckles" before the homicide.

7. ——: ——: weapon in defendant's possession.

It is shown that injuries and wounds upon the head of deceased could have been made by instruments of the character of the "knuckles." The evidence, though of little weight, certainly tended to connect defendant with the killing.

IX. A witness was permitted to testify that on the night of the homicide he saw a buggy and team drawn through a street in the town where he lived.

8. ——: ——: identification of buggy by its "rattle."

He knew the defendant, and the defendant's buggy, and identified the buggy he saw as defendant's from the peculiar "rattle" of the wheels. He was a wagon-maker. Counsel think the evidence was erroneously admitted, as it was nothing more than the expression of the opinion of the witness. Undoubtedly animals and things may be identified, by those

familiar with them, by the noises they make. The witness states that he identified the buggy by its "rattle." Observation teaches that identification in this manner may often be safely established. The business of the witness would tend to direct his attention to the buggy, and enable him to recognize the peculiar noise made by it. The evidence was rightly admitted.

X. The counsel for defendant, after stating hypothetically the condition of the body of the deceased, the character of the wounds, and other matters, asked a witness, who was a physician, how the wounds upon defendant were probably made. The evidence was rightly excluded. It sought for an expression of opinion based upon matters which were to be weighed and considered by the jury, and determined by the exercise of their own judgments, and not upon the opinion of another. The matters upon which the question was based were not peculiarly within the knowledge of the witness or of the profession to which he belonged.

9. ——: expert testimony: what is not.

XI. Many other objections to the rulings of the district court, upon the admission of evidence, are raised by counsel. Some of them are almost identical with those we have considered; all are of the same character. Their separate discussion is not demanded by their character, and would be of no interest to the parties or the profession. We are, therefore, authorized to dispose of them together by the single remark that we discover no error in the rulings to which they are directed.

XII. It is urged by counsel that the verdict is against the evidence in that there is no proof that the deceased came to his death by violence inflicted by defendant or any other person. The evidence is voluminous, covering more than twelve hundred pages, and was given by more than one hundred witnesses. It is wholly circumstantial. It is impossible to recite it, much more to discuss it, without devoting several hundred pages to the work. It cannot be expected that this will be attempted. A careful reading of the voluminous record does not fail to

10. ——: evidence to support verdict of guilty.

impress the mind that the evidence discloses a motive possessed by defendant for the crime. The deceased was a burden upon defendant, who was under obligation to assist him in making his defense to a criminal charge to which he had been held to answer upon bail entered by defendant. The deceased held a life insurance which defendant regarded as pledged to reimburse him for his advances to the deceased, whose death would relieve defendant of the burden, and enable him to recover the life insurance, which he actually attempted. The deceased, on the day preceding the night of his death, started to go to a neighboring town. Defendant went to another town on business, which the evidence tends to show was a pretense. He knew of the route the deceased proposed to travel, and his purpose to make the journey. Defendant was seen the night of the homicide going in the direction of the place where the crime was committed, and there is evidence tending to show that he was present at the place. Very many incidents and circumstances point to this conclusion. We think that no reasonable mind could doubt that, if the death was caused by violence, defendant was the perpetrator, or one of the perpetrators. But it is insisted that the deceased came to his death by an accident, and not through criminal violence. The indications unmistakably show that his body was drawn upon the ground for a considerable distance. The lines were found fastened to one of his legs, and broken from the harness. A wheel of the buggy and other parts were broken. Blood was found upon the horse. The theory of defendant's counsel as to the cause of death is this: The buggy was broken while the deceased was driving. By the accident he sustained some injury causing blood to flow. He then arranged the harness, unbuckling the lines from the bits, looping them up, and mounted the horse. This accounts for the blood found upon the horse. He used the lines to assist in the support of his feet as stirrups. The horse became restive and threw him, and his leg became entangled and fastened in the lines, and by them he was drawn to the place where the body was found.

The injuries to his head, which caused his death, were inflicted by the horse's feet. By the theory of the state, many of the circumstances are accounted for by the conclusion that they were intended to induce the belief that death resulted from accident. This theory explains the broken buggy, the dragging of deceased by the leg, etc. It also holds that the killing was not in the road where the buggy was found, and that the deceased had been carried on the horse to that place, after violence had been inflicted on him. It is impossible to recite all of the numerous facts relied upon to support each of these theories. There are difficulties in the way of assenting to either. The theory of the defendants, to our minds, seems impossible in all of its details ; that of the state, in some, hardly probable. But we cannot say that the jury, in the exercise of intelligent, honest and unbiased discretion, could not have found the state's theory to be the true one. Applying the familiar rules requiring us to sustain a judgment unless there be such lack of evidence to support the verdict as will lead to the conclusion that it was the result of passion and prejudice, we are led to the conclusion that we must permit the verdict to stand.

XIII. The defendant complains of the refusal by the court to instruct the jury, as asked by him, upon the rule of reasonable doubt as applicable to the question whether the death resulted from accident, or violence feloniously inflicted. We think an instruction given fully covered this point. It was needless to repeat it. The refusal to give other instructions asked for defendant are also complained of by counsel. They are based upon the thought that the evidence is not sufficient to support certain facts, which, it is claimed, are essential to uphold the verdict. The instructions are, in effect, comments upon the evidence which would lead the mind to conclusions favorable to defendant. In this view they, or some of them, are objectionable in form ; but we think that, so far as they are based upon the thought that the evidence is insufficient upon any point of the

11. INSTRUC-
TIONS: repe-
tition not
required.

case to authorize a verdict of conviction, they are erron-eous, and were rightly refused.

XIV. Counsel think that the instructions fail to present rules to guide the jury in considering and weighing the circumstantial evidence, and that the failure to give proper instructions of that character is an error, demanding the reversal of the case. We do not concur in this view. In our opinion the jury were fully, carefully and correctly instructed.

We have given the case careful consideration. The character of the objections in no instance demands prolonged discussion. Many of them are so nearly like others disposed of, or are so obviously without merit, that they are not separately considered. It is our conclusion that the judgment of the district court must be

AFFIRMED.