STATE of Iowa, Appellee,

v.

Michael Dean PETERSON, Appellant.

No. 56279.

Supreme Court of Iowa.

June 26, 1974.

Scalise, Scism, Gentry, Brick & Brick, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., Darby Maria Coriden, Asst. Atty. Gen., Ira Skinner, Sp. Asst. Atty. Gen., and Emory H. Emerson, County Atty., for appellee.

HARRIS, Justice.

Defendant was indicted and tried for the murder of his fiance. He appeals his conviction of the included offense of manslaughter. We reverse because of the failure to allow defendant to take discovery depositions, because of the admission of blood samples illegally obtained, and because the State failed to disclose exculpatory evidence. In view of their importance upon remand we shall discuss other assignments.

Jean Marie Christensen was found dead in her Storm Lake apartment at about

11:00 a. m. on October 17, 1971. Decedent and defendant were engaged and had spent the preceding evening together. There is no indication they quarreled or were on other than friendly terms. The deceased was two months pregnant at the time of her death; defendant was the father of the child. On the evening of the night in question the couple called on the minister who was to marry them. They visited with him about wedding plans and seemed to him to be an affectionate couple, smiling and happy.

The charge specified in the indictment was murder in the perpetration of a rape in violation of § 690.2, The Code. Defendant's conviction of the included offense was based on circumstantial evidence. His own testimony placed him in decedent's apartment from 11:30 p. m. to 1:30 a. m. He was seen at his place of employment at 1:45 a. m. There was testimony decedent had been strangled. The presence of male semen indicated sexual intercourse near the time of death. Other facts can be more appropriately recited as they relate to specific assignments.

■ I. Defendant first complains of the trial court's refusal to allow him to take oral discovery depositions. As authority for his application defendant cites § 781.10, The Code, which provides: "A defendant in a criminal case, either after preliminary information, indictment, or information, may examine witnesses conditionally or on notice or commission, in the same manner and with like effect as in civil actions." Defendant freely concedes our interpretation of this statute severely limits its application. State v. District Court (Delaware County), 253 Iowa 903, 114 N.W.2d 317; State v. McClain, 256 Iowa 175, 125 N.W.2d 764; State v. Gates, 260 Iowa 772, 150 N.W.2d 617; State v. Parker, 261 Iowa 88, 151 N.W.2d 505; State v. Rankin, 181 N.W.2d 169 (Iowa

1970). In State v. District Court (Delaware County), supra, we held our discovery rules, adopted in 1957, were available only in civil cases. We expressed the belief § 781.10 was placed in our Code revision of 1860 "for the purpose of giving the defendant an opportunity to obtain and offer evidence in his own behalf when the witnesses might not be otherwise available." 253 Iowa at 910–911, 114 N.W.2d at 321.

Defendant challenges this interpretation and the reasons upon which it was based. A review of each reason discloses defendant's challenge is valid and that the interpretation we adopted in State v. District Court (Delaware County), supra, should now be abandoned.

First, defendant notes § 781.11, The Code, has, since 1860, otherwise specifically provided the right to perpetuate testimony.[1] The right to perpetuate testimony under § 781.11 arises when one becomes apprehensive of a possible prosecution. But the right does not terminate with the bringing of the action. 26A C.J. S. Depositions § 25, page 316. It is apparent our interpretation of § 781.10 renders it a useless restatement of the section that follows it.

Another rationale in State v. District Court (Delaware County), supra, is also challenged. We pointed out the information to be sought by way of discovery for a criminal defendant is otherwise available to him in our criminal procedures, particularly in the minutes of testimony attached to the indictment or county attorney's information. See § 772.3, The Code. This rationale is especially offensive to this defendant who separately assigns as error the allowance of testimony by an expert witness on matters beyond the scope indicated in the minutes. This assignment will be discussed in a later division. To prohibit discovery because of the minutes of

---

1. § 781.11 provides: "A person apprehensive of a criminal prosecution may perpetuate testimony in his favor in the same manner and with like effect, as may be done in apprehension of any civil action."

testimony seems bitter irony to the defendant. We have consistently refused to reverse a conviction for allowing testimony beyond the minutes. Such consistent refusal dates from State v. Bowers, 17 Iowa 46 (1864).

Our opinion in State v. District Court (Delaware County) finds further evidence of a legislative intent to limit the operation of our discovery rules (rule 140 et seq., Iowa Rules of Civil Procedure) in the fact that such discovery cannot be entirely reciprocal. A criminal defendant obviously cannot be deposed. Constitution, State of Iowa, Article I, § 10. One might challenge whether legislative intent is involved at all. Under § 684.19, The Code, the legislature is given a veto and right to amend our changes in procedural rules. Rule changes might well be said to reflect judicial rather than legislative intent. In any event § 781.10 expressly applies only to criminal defendants.

Except as to the defendant himself the State does have an effective means of obtaining discovery over defense witnesses. § 769.19, The Code, directs the clerk of district court to " * * * issue subpoenas for such witnesses as the county attorney may require, and in such subpoenas shall direct the appearance of said witnesses before the county attorney at a specified time and place * * *" for the purpose of examination by the State and, if he desires, cross-examination by the defendant.

Defendant rightly argues our subsequent decisions, previously cited, greatly temper the strict exclusion of criminal discovery announced in State v. District Court (Delaware County), supra. See also State v. Cowman, Iowa, 212 N.W.2d 420, 423. We detailed the conflicting arguments on the question of criminal discovery in another context in State v. Eads, 166 N.W.2d 766 (Iowa 1969). Much can still be said for refining criminal discovery rules; but such refinement, in view of the limitation of § 781.10, must await legislative action. We overrule State v. District Court (Delaware

County) and now hold a defendant, by authority of § 781.10, The Code, may take discovery depositions of State's witnesses. The denial of defendant's application to take discovery was error.

■ II. Defendant was arrested November 5, 1971. He asked to consult a lawyer during the booking procedure on the same morning. He was not allowed to make a phone call or to contact a lawyer. He was given the Miranda warnings after the procedure was completed and indicated he did not want to talk with the arresting officers.

Terry Johnson, a special agent with the Iowa bureau of criminal investigation assigned to the case, then asked defendant for a sample of his blood. Johnson's own testimony establishes defendant was reluctant to submit such a sample. Before doing so defendant inquired of Johnson as to the legality of the procedure. Defendant went so far as to say he wanted to talk with his lawyer before giving it. Johnson assured defendant the procedure was perfectly legal, or if not, his lawyer could keep it out of evidence in any later trial. Only after this assurance did defendant submit the sample. No warrant for the search of defendant's person was sought or obtained.

The results of the sample were submitted for analysis to establish blood type. The evidence was unsuccessfully challenged by defendant in a pretrial motion in limine. The challenge was renewed to no avail when the evidence was offered and received at trial. The avowed purpose of this evidence was to show defendant's blood type, type A, matched the semen found within the decedent. Defendant's second assignment is addressed to this evidence. We believe and hold the case must be reversed by reason of its admission.

Defendant has no need to here rely on recently developed principles in the fields of constitutional or criminal law. Material facts are, as defendant insists, "four-

square" with those shown in State v. Height, 117 Iowa 650, 91 N.W. 935, which we decided in 1902. In Height the defendant was arrested for the rape of a woman infected with a venereal disease. The arresting officer and county attorney requested an examination of Height's genitals to determine if he too had a venereal disease. Similarly no search warrant was ever obtained. Height resisted such an examination but finally consented to it only after being assured by the arresting officer that the State had a right to require the examination. It was discovered Height had the same venereal disease as the prosecutrix and his subsequent conviction was reversed by us. We held the compulsion by the officers violated Article I, § 8, of the Iowa Constitution. We said:

"We have * * * in our state constitution an express guaranty against any proceeding under the guise of law such as that resorted to by the officers in this case for the purpose of securing criminating evidence from the person of the defendant. It is provided by article 1, § 8, that 'the right of the people to be secure in their persons, * * * against unreasonable seizures and searches, shall not be violated;' * * *." 117 Iowa at 661, 91 N.W. at 938.

In the same opinion we pointed out:

" * * * The search was for the mere purpose of securing evidence by an invasion of the private person of the defendant, and we think there is no consideration whatever which will justify it. * * * [I]t is enough to say that the officers acted unlawfully in compelling defendant to submit to this examination, and all evidence with reference to information secured thereby should have been excluded on defendant's objection." 117 Iowa at 665, 91 N.W. at 940.

Legal developments in the many decades following our decision in State v. Height disclose it was no aberration. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, holds intrusions into body cavities are subject to Fourth Amendment restrictions. The court in Schmerber did uphold a warrantless search and seizure (taking of blood sample) because of exigent circumstances. But the court made it clear such warrants would be required unless exigent circumstances were shown. " * * * Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned. * * *." 384 U.S. at 774, 86 S.Ct. at 1835, 16 L.Ed.2d at 919. There were no exigent circumstances in this case. Defendant was not an intoxicated automobile driver whose alcoholic blood count would vary with the passage of time. There was no way he could lose or destroy his blood.

■ To be sure, Fourth Amendment rights are not violated by a warrantless search to which a victim consents. State v. Charlson, 261 Iowa 497, 506, 154 N.W. 2d 829, 834. However the State must show an intentional relinquishment or abandonment of a known right or privilege. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. The defendant in this case did not intentionally relinquish a known right. This defendant's consent amounted only to a capitulation to authority. See State v. Johnson, 257 Iowa 1052, 1060–1062, 135 N.W.2d 518, 524–525. We hold the taking of the blood sample was a violation of defendant's rights under the Fourth Amendment of the United States Constitution and Article I, § 8, of the Iowa Constitution. Various other bases for defendant's challenge upon this evidence need not be considered.

In an effort to avoid the error arising by reason of the admission, the State submits counter-arguments which will be considered in the following division.

■ III. The State argues, notwithstanding an accused's rights under the Fourth Amendment of the United States Constitution and under Article I, § 8, of the Iowa Constitution, the seizure can be

excused by reason of a right to make a full search of a person incident to a lawful arrest, citing United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427. We do not believe the "full search" indicated in that case included blood typing. The argument is without merit.

■ Alternatively the State argues the admission of the blood test was harmless error for what must be described as an unusual reason. The State argues that, since 40 to 50 percent of the male population of the United States have blood type A, the evidence is not probative. The State suggests that since the evidence is not probative its admission was harmless. We find no correlation between how probative evidence might be and how harmless would be its erroneous admission. This suggestion is also without merit.

■ Finally the State suggests the evidence was admissible on an anticipatory impeachment theory. The State argues the evidence became habilitated and admissible ab initio to impeach the defendant when he later testified as a witness at trial. The State argues defendant must answer for his own trial strategy in testifying and further in failing to request an instruction limiting the challenged evidence to consideration for impeachment purposes. State v. Faught, 254 Iowa 1124, 120 N.W.2d 426.

Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, holds evidence acquired in violation of one's constitutional rights can be used to impeach his testimony, even though the evidence would be inadmissible as a part of the State's direct case. But the principle has no application to this appeal.

■ "Impeachment" is the word given to denote the technique for calling into question the veracity of a witness. Fundamental evidence law recognizes five surviving lines of attack upon the credibility of a witness. The first, perhaps the most effective and certainly the most frequently employed, is to prove a witness, on a pre-

vious occasion, has made statements inconsistent with his present testimony. A second alternative is to show the witness is biased, by reason of emotional influences such as kinship for one party or a hostility to another, or motives of pecuniary interest, whether legitimate or corrupt. A third alternative is to attack the character of the witness. The fourth recognized line of attack upon a witness's credibility is to show a defect in his capacity to observe, remember or recount the matters testified about. The fifth, and final surviving alternative, is to prove by other witnesses that material facts are otherwise than as testified to by the witness under attack. A sixth alternative once recognized, but now obsolete, assailed the religious belief of the witness. See generally McCormick on Evidence, Second Ed., § 33, page 66. The fifth means of impeachment, by contradicting evidence, is discussed in McCormick on Evidence, Second Ed., § 47, pages 97–100.

Defendant denied having sexual intercourse with decedent on the night in question. Relying on the fifth impeachment method, the State argues this denial of sexual intercourse had been previously rebutted by evidence defendant's blood type is the same as that in the semen found within the decedent. It is to be noted this argument is diametrically opposite the one made by the State when it previously urged the error in admitting evidence of the blood type was harmless because the evidence was not probative.

■ We think the State's attempt to habilitate the evidence for the purpose of impeaching the defendant fails since it does not contradict his testimony. See IIIA Wigmore on Evidence, § 1000, page 956. It did not contradict because it was not probative. Indeed, even aside from all questions of the unconstitutional seizure of the evidence, it could and should have been rejected for that reason. It is widely recognized that a large proportion of the male population have type A blood. See for example People v. Robinson, 27 N.Y.2d 864, 317 N.Y.S.2d 19, 265 N.E.2d 543 (1970).

The unanimous New York Court of Appeals held:

" * * * Proof that defendant had type 'A' blood and that the semen found in and on the body of decedent was derived from a man with type 'A' blood was of no probative value in the case against defendant in view of the large proportion of the general population having blood of this type and, therefore, should not have been admitted. * * *."

Neither do we think it appropriate to absolve the improper admission of evidence on the claim it could be considered in connection with later defense testimony. Irrelevant evidence sometimes becomes relevant in rebuttal or explanation of evidence offered by an adversary. But it seems well settled " * * * it is essential that the adverse party shall have actually raised the particular issue." Jones on Evidence, Fourth Ed., § 201, pages 352, 358. See also 29 Am.Jur.2d, Evidence, § 267, pages 316–317. A somewhat similar question arises under the rule prohibiting impeachment of a party's own witness:

"The object then is to define the point of time at which it may properly be said that the person has become the witness of the party * * *. It would seem that the proper test is to be found in the question *whether he has given admissible testimony*. Until then, he may be potentially a witness (as are all persons having relevant knowledge), but is not actually a witness. Until he has made a contribution, by way of testimonial assertion, to the general mass of evidence, and this contribution has been accepted by the party and sanctioned by the Court as a part of the evidence, the person is only prospectively and not 'de facto' a witness. * * *." (Emphasis in the original) VI Wigmore on Evidence, Third Ed., § 1893, page 563.

The evidence was not reoffered after defendant later testified. When the evidence was received the State had no indication of how or whether defendant would testify. We find no waiver of the defendant's proper objection by the fact of defendant's later testimony. The admission of the blood test constitutes reversible error.

IV. Defendant also claims the trial court erred in admitting into evidence a large number of personal letters he had written to the decedent. He urges they were irrelevant, too remote and of no probative value. We find no error in their admission.

The letters doubtless were harmful to the defense. They range from awkwardly passionate to crudely obscene. But they did reveal defendant's feelings toward the decedent, the nature of their relationship and a considerable amount of detail as to their activities. Their relevance was a matter largely within the discretion of the trial court. State v. Graham, 203 N.W.2d 600 (Iowa 1973). We do not believe them too remote in this case. They were all written within about a year preceding the decedent's death. During that year there was an intimate relationship between defendant and decedent.

V. Defendant testified he had been with decedent on the night of her death and in her apartment from 11:30 p. m. to 1:30 a. m. He was soon thereafter seen elsewhere. Fixing the time of death became crucially important in the trial. Defendant's counsel in his trial preparation noted only two doctors listed as State witnesses on the indictment. One was Dr. Paul W. Brecher, M.D., a general practitioner, who examined the body soon after it was discovered. Defendant challenges the competency of Dr. Brecher to give an expert opinion as to the time of death. The other State medical witness was Dr. Karl H. Wegner, M.D., a forensic pathologist. Defendant's challenge to Dr. Wegner's testimony will be considered in the following division.

Dr. Brecher had no training in forensic medicine and his only training in pathology was a medical college course 40 years prior to trial. He had read no publications on the subject of time of death and had almost no experience in determining time of death. The only examination Dr. Brecher made of the decedent was to move the fingers of the right hand and slightly move the left leg to determine rigor mortis. Defendant vigorously cross-examined Dr. Brecher in an effort to show a lack of knowledge of certain factors such as temperature and physical activity on the onset of rigor mortis.

■ Principles controlling opinion testimony are well settled. It will be allowed if its subject matter is of a nature that it will aid the jury in the discharge of their responsibilities and is based upon some special training, experience or knowledge of the witness. Expert testimony is not admissible unless the witness is shown to be qualified. Sufficient facts must be shown to enable him to express an opinion which is more than mere conjecture. His expertise in a certain area is not sufficient. He must be qualified to answer the specific question propounded. The receipt of opinion evidence, lay or expert, is a matter which lies largely in the sound discretion of trial courts. An abuse of that discretion must be shown to the prejudice of the complaining party before we interfere. The discretion is not unlimited and must be a legal one based on sound judicial reason. The trial court's discretion terminates where it appears as a matter of law the witness is not qualified or the facts upon which the opinion is based are not sufficiently stated. We are committed to a liberal rule on the admission of opinion testimony. In Bengford v. Carlem Corporation, 156 N.W.2d 855, 865, 866 (Iowa 1968), we said:

"The admission of opinion evidence rests largely in the sound discretion of the court and considerable leeway is allowed in this field of evidence for the reason that no matter how the opinion question is phrased or formulated, it remains an opinion which the trier of facts is at liberty to reject. Therefore only in clear cases of abuse would admission of such evidence be found prejudicial. (Citations)."

The foregoing principles with appropriate citations were summarized in Ganrud v. Smith, 206 N.W.2d 311 (Iowa 1973). It should be further noted a doctor is not incompetent to testify as an expert merely because he is not a specialist in a branch of his profession. See State v. Wallin, 195 N.W.2d 95 (Iowa 1972); State ex rel. Schmidt v. Backus, 259 Iowa 1144, 147 N.W.2d 9; 31 Am.Jur.2d, Expert & Opinion Evidence, § 106, page 631; 23 C.J.S. Criminal Law § 875c, page 449. On the other hand a lack of educational experience in a particular branch of medicine may be considered as affecting the weight of an expert's testimony. Wolf v. Murrane, 199 N.W.2d 90 (Iowa 1972); West v. Broderick & Bascom Rope Company, 197 N.W.2d 202 (Iowa 1972).

■ Although the question propounded Dr. Brecher on the time of death was shown to be extremely complex we believe the challenge falls somewhat short of rendering his answer inadmissible. Under the authorities cited we believe the objections go only to the weight of his testimony. We find no abuse of discretion by the trial court in receiving Dr. Brecher's testimony.

■ VI. There is no challenge to the competence of Dr. Wegner. Defendant sought to exclude his testimony for the reason the minutes of Dr. Wegner's testimony, attached to the grand jury indictment, did not indicate he would testify as to the time of death. Defendant asks we overrule a long line of cases and hold a State witness cannot testify beyond the matters mentioned in the minutes of his testimony attached to a grand jury indictment or county attorney's information.

We have refused to do so in State v. Bowers, supra, 17 Iowa 46 (1864); State v. Rainsbarger, 74 Iowa 196, 37 N.W. 153; State v. Harlan, 98 Iowa 458, 67 N.W. 381; State v. Harding, 204 Iowa 1135, 216 N.W. 642; State v. Thom, 236 Iowa 129, 17 N.W.2d 96; State v. Miller, 259 Iowa 188, 142 N.W.2d 394; State v. Lynch, 197 N.W.2d 186 (Iowa 1972); and State v. Cunha, 193 N.W.2d 106 (Iowa 1972). We decline again. There was no error in allowing Dr. Wegner's testimony.

VII. Defendant's final assignment is addressed to the overruling of his motion for a new trial. The motion was based in part on the claim the State deliberately suppressed exculpatory evidence. Defendant established Lowell Briggs, a filling station attendant and resident of Storm Lake, gave a statement to the officers investigating this case. The statement was given a few days following decedent's death. The information was not given by Mr. Briggs to the defendant, his family or his counsel. It was unknown to them until after conclusion of the trial. According to Mr. Briggs, he advised the officers he was working at the filling station in the neighborhood of decedent's apartment on October 17, 1971. He reported Bruce Grieme, at about 3:00 a. m. on that date, appeared there and said to Mr. Briggs that he had "just had a tussle with a broad." Briggs reported to the officer Grieme said "he was trying to get a little off of her." Briggs also reported Grieme said the woman to whom he referred worked at the Cone-E-Corner and that the attempt had occurred in her apartment. He reported Grieme was pale and very nervous. His clothes looked as if he had hurriedly gotten into them. His belt was twisted. His shirt was unbuttoned, even his cuffs. He reported Grieme said, "How fur should a man go with a girl like that?" He quoted Grieme as adding, "I sure as hell hope I never hurt her too much." He reported Grieme was very upset.

Defendant showed that on October 17, 1971 decedent was the only girl who worked at the Cone-E-Corner who was injured or hurt. His evidence at trial indicated it was possible she had been killed at around 2:30 or 3:00 a. m. on that date.

Prior to trial defendant moved for a bill of particulars in which he requested any exculpatory evidence known to the State. A similar request was contained in his motion in limine. The State resisted on grounds it had no such evidence. The defendant's request was therefore denied.

■■ The State may not suppress requested statements which are materially exculpatory. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; State v. Aossey, 201 N.W.2d 731 (Iowa 1972). The county attorney is charged with the responsibility of seeing important evidence is not suppressed so as to deny a fair trial. State v. McClain, 256 Iowa 175, 125 N.W. 2d 764. In State v. Houston, 209 N.W.2d 42, 47 (Iowa 1973) we warned: "* * * Prosecutors are also cautioned that suppression of exculpatory material is reversible error. (Citations)."

■ The State argues Mr. Briggs' testimony was not exculpatory because the State produced rebutting evidence in the nature of an alibi for Mr. Grieme. The State also argues the testimony of Mr. Briggs was hearsay. Both defenses miss the point. Under our cases the defense was entitled to the exculpatory evidence in order to investigate it and to use it both in trial preparation and in the trial itself. It is no answer that the State does not believe the evidence to be true or believes it could object to it when offered. The failure to furnish this information to the defendant constituted grounds which demanded the sustaining of defendant's motion for a new trial. The denial of that motion was reversible error.

Reversed and remanded.

All Justices concur, except UHLEN-HOPP, J., MOORE, C. J., and REES, J., who concur specially.

UHLENHOPP, Justice (concurring specially).

I concur in the result and in all of the court's opinion except division I, from which I dissent.

I believe that in line with the modern trend, the whole subject of pretrial discovery in criminal cases should be thoroughly studied in Iowa, and such changes should then be installed by statute or rule as appear advisable.

The decisional method is not well suited for use in embarking upon a new criminal discovery system. Criminal discovery is considerably different from civil discovery; different problems are involved. Nakell, Criminal Discovery for the Defense and the Prosecution—The Developing Constitutional Considerations, 50 N.C. L.Rev. 437. I would therefore stand by our present decisions on criminal discovery pending action by the next General Assembly on its proposed revision of Iowa criminal procedure. At the same time, I would suggest to the Assembly the advisability of a new statute authorizing this court to propose rules of criminal procedure as we can now propose rules of civil procedure. Code 1973, § 684.18. With such a statute, we could appoint an advisory committee of members of the bar who are especially knowledgeable in criminal law, to help us bring and keep our system of criminal procedure up to date—including discovery. This seems to me a wiser approach than the ad hoc decisional method, especially with respect to criminal discovery when we do not have a set of standing rules which were designed for criminal cases.

MOORE, C. J., and REES, J., join this special concurrence.