STATE of Iowa, Appellee,

v.

Glen Eldon HUMMELL, Appellant.

No. 56409.

Supreme Court of Iowa.

April 16, 1975.

Donald E. Gartin, Mount Pleasant, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., Des Moines, and Gary L. Wiegel, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and HARRIS, JJ.

REES, Justice.

Defendant was charged by county attorney's information with the crime of murder as defined in section 690.1, The Code, 1971. Following the overruling of his demurrer, defendant entered a plea of not guilty to the charge and was tried to a jury. After a lengthy trial, the jury returned a verdict on March 19, 1973 finding defendant guilty of manslaughter. Defendant appeals. We affirm.

While the evidence at trial often conflicted, the record generally supports the following description of the incidents which gave rise to the prosecution of this case.

At approximately 5:30 a. m., April 2, 1972 the deceased, Clara Dameron, accompanied by her daughter, Mary, age 16, was returning by automobile to her home south of Mount Pleasant after spending the night at a local club. As the Damerons approached home, defendant (from whom the deceased had recently been divorced) was backing his automobile out of the driveway and turning in their direction. The deceased continued driving toward her home, defendant toward

her. As they approached one another defendant veered left into the deceased's lane of traffic, forcing her to the far right side of the road. Averting defendant's automobile, the deceased then managed to drive the rest of the way home without further incident. Defendant followed, and confronted the deceased in her driveway as she was attempting to get out of her automobile. An altercation ensued during which defendant struck the deceased and grabbed her about the neck and (according to defendant's testimony) the deceased attacked him with a pop bottle. The deceased then either slipped or was thrown to the ground. The Mount Pleasant police, who had been summoned earlier by Mary Dameron at her mother's request, arrived on the scene a few minutes later. They found defendant standing beside the deceased's car and the deceased lying in the front seat complaining of pain in her legs, right arm and neck. An ambulance was called and Mrs. Dameron was taken to the Henry County hospital.

Later the same day Mrs. Dameron was transferred to University Hospitals at Iowa City, where x-rays indicated she was suffering from an intervertebral disc location which permitted the vertebrae in her neck to "shear" or move forward on one another when there was movement of her spinal column. Surgery to correct that condition was performed on April 2, the procedure involving the removal of a disc located between the deceased's fourth and sixth cervical vertebrae and an interbody fusion. The following day additional x-rays disclosed a displacement backward of the deceased's fifth vertebra, causing a marked instability in her cervical spine. Further surgery was undertaken to align the vertebral column and stabilize the cervical spine on April 10. During this surgery the deceased's stomach unexplainably became distended and there was an abrupt fall in her blood pressure. Efforts to stabilize her condition were unsuccessful and she died four hours later, on April 10, 1972.

A county attorney's information charging defendant with the crime of murder was filed on October 25, 1972. On trial of the case, at the close of the State's evidence, defendant filed motions for a directed verdict of acquittal and to reduce the charges against him. The motions were overruled and the jury returned a verdict finding defendant guilty of manslaughter. Defendant thereupon filed combined post-trial motions for acquittal notwithstanding the verdict, arrest of judgment, and in the alternative for new trial. The combined motions were overruled and judgment entered on the verdict. Defendant was subsequently sentenced to serve a term not to exceed eight years in the State Penitentiary at Fort Madison, fined $100 and assessed the costs of his prosecution. He appeals, contending:

(a) Trial court erred in failing to order production of matters specified in his pretrial motion for discovery.

(b) Trial court erred in overruling his motion for new trial grounded on the claim the State suppressed a statement allegedly taken from the deceased exculpating him from blame in causing her injury.

(c) Trial court erred in overruling his objections to hypothetical questions posed by the State on direct examination of expert medical witnesses.

(d) Trial court erred in sustaining the State's objections to hypothetical questions defendant posed to one of the expert witnesses on cross examination.

(e) Trial court erred in overruling his objection to State's Exhibit 10, a colored slide taken during the post-mortem examination of the body of the deceased which showed an exposed portion of her cervical spine.

(f) Trial court erred in overruling his motions for directed verdict of acquittal and to reduce charges and in overruling his combined post-trial motions for acquittal notwithstanding the verdict, arrest of judgment and in the alternative for new trial.

The issues raised by the above contentions will be treated in order, the first two in a single division.

I. Central to the first two issues raised by defendant on this appeal is a statement allegedly made by the deceased to Henry County Sheriff Van Crawford and his deputy Donna Sponberg at University Hospitals, Iowa City. In a "professional statement" he offered in support of defendant's combined post-trial motions, defendant's counsel stated Ms. Sponberg had revealed to him after trial that during the course of an interrogation conducted sometime between April 2 and April 10 at University Hospitals, the deceased "indicated she was willing to and did accept responsibility for the events which took place at her home involving defendant and that she did not want (him) prosecuted as she felt responsible for those events". In an accompanying affidavit Ms. Sponberg stated that she prepared a written memorandum of the meeting with the deceased and that her original notes together with a typewritten transcription of her memorandum were subsequently placed in the Henry County sheriff's office, but that she had no knowledge of the present whereabouts of the documents. Defendant's counsel stated at the post-trial hearing that Sheriff Crawford had denied any knowledge of the written statement referred to by Ms. Sponberg.

The record reveals that prior to trial defendant filed a dragnet motion for the production of "all signed or unsigned statements of any persons known to have knowledge of any part of the facts or events involved in the pending charge", including "any . . . statements . . . transcribed by a third person, all investigative reports of members of the police department . . . (and) all statements attributed to the defendant". The motion was overruled, trial court declaring defendant's request moot because the prosecutor had indicated "he has or will give to defendant's attorney copies of all statements and reports in his possession". At the hearing on defendant's combined post-trial motions, defendant's counsel conceded the prosecutor had kept his promise to make available all the requested documents in his possession, but argued there had been "some impropriety at another level with the result the records (of the deceased's statements to Officers Sponberg and Crawford) are missing". The county attorney responded, stating he had no knowledge of the typewritten statement Ms. Sponberg claimed to have prepared following the meeting with the deceased and that he had earlier advised defendant and his counsel of the substance of the deceased's statement as it was related to him by Sheriff Crawford. He further stated he had advised defendant's counsel before trial that he did not intend to call Ms. Sponberg as a witness and that any testimony she might give concerning statements made to her by the deceased would be inadmissible hearsay.

Defendant argues trial court erred in refusing to order production of the police report of the statement allegedly made by the deceased and transcribed by Ms. Sponberg, and compounded the error when it denied his motion for new trial in light of the "professional statement" by his counsel concerning the substance of that statement as relayed to him by Ms. Sponberg. He relies on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 and State v. Peterson, 219 N.W.2d 665 (Iowa 1974), contending the statement was exculpatory in that it tended to corroborate his testimony and establish his innocence. The State counters defendant's contention with the argument he failed to lay a proper foundation for production of the statement, citing State v. Niccum, 190 N.W.2d 815 (Iowa 1971).

The United States Supreme Court held in Brady v. Maryland, *supra,* that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution". See 373 U.S. at 87, 83 S.Ct. at 1196–1197, 10 L.Ed.2d 215. We have followed the holding in *Brady,* warning prosecutors that the suppression of exculpatory material is reversible error. See *e. g.,*

State v. Houston, 209 N.W.2d 42 (Iowa 1973); State v. Peterson, *supra*; State v. Eads, 166 N.W.2d 766 (Iowa 1969). The United States Supreme Court has recently commented,

"The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence. These are the standards by which the prosecution's conduct . . . is to be measured".

Moore v. Illinois, 408 U.S. 786, 794, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706.

█ To balance the foregoing, it should be noted *Brady* does not command the prosecution to make a complete and detailed accounting to the defense of all police investigatory work on a case. Moore v. Illinois, *supra*. The defendant will not be permitted broad and blind "fishing expeditions" into the evidence of the prosecution. His request for exculpatory evidence must be for that which exists. State v. Niccum, *supra*, 190 N.W.2d at 826. See State v. Kelly, 249 Iowa 1219, 1221–1222, 91 N.W.2d 562, 564, citing Gordon v. United States, 344 U.S. 414, 420, 73 S.Ct. 369, 373–374, 97 L.Ed. 447, 453. See generally, Note on Criminal Discovery in Iowa, subsection (b), "Right of the Accused to Obtain Disclosure of Exculpatory Evidence", 24 Drake L.Rev. 185, 198.

We have been confronted on several occasions with the claim a defendant was denied due process when deprived of access to police reports containing information given by State's witnesses. State v. Houston, *supra*; State v. Lyons, 210 N.W.2d 543, 547 (Iowa 1973). In those cases we clarified the distinction between a statement made by a witness (including the victim) and an imprecise summary of what another understood

him to say, and outlined the test which must be met before the defendant is entitled to access to a given report. Citing Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 and State v. Schlater, 170 N.W.2d 601 (Iowa 1969), we suggested in State v. Houston that

"the true test is whether the statement is the witness' own, rather than the product of the investigator's selections, interpretations and interpolations. It must be shown, unless there is direct evidence the witness prepared, signed or adopted the statement, that it minimally is a continuous, narrative made by the witness and recorded verbatim, or nearly so."

State v. Houston, *supra*, 209 N.W.2d at 46. In both State v. Houston and State v. Lyons we held defendant was not denied due process when refused access to police reports allegedly containing statements of prosecution witnesses where there was no evidence the witness signed or adopted the report or that it was a continuous narrative statement recorded verbatim.

█ We consider the first two issues raised by defendant here against the above background. The record reveals defendant's original motion for discovery did not specifically seek "exculpatory evidence". It was in essence an all-inclusive blanket motion for all statements and investigative reports in the prosecution's possession. No mention was made in the discovery motion of any statement given Ms. Sponberg by the deceased, even though the prosecutor's unrefuted remarks at the post-trial hearing on defendant's combined motions suggested defendant's counsel must have been aware before trial that Ms. Sponberg had some information concerning such a statement. The record also reveals that except for the affidavit of Ms. Sponberg, controverted by Sheriff Crawford, there was no showing the alleged statement was ever reduced to writing, *i. e.*, existed in a form susceptible of reproduction by the State. Additionally, there is simply no hard evidence the statement was ever suppressed, the record in-

stead suggesting the prosecution supplied defendant with all the documents it possessed as well as notice of information Ms. Sponberg had concerning the statement the deceased presumably gave her. Finally, there was absolutely no showing the alleged police report of the deceased's statement, even if extant at one time, was signed or adopted by her, or constituted a continuous narrative of her remarks.

On the face of this record and in light of the foregoing authority, there is no basis for defendant's claim trial court erred in refusing to order production of the statement allegedly made by the deceased and transcribed by Ms. Sponberg. Defects in defendant's discovery motion aside, there has been no showing here the State suppressed from defendant exculpatory evidence, or for that matter, no showing the evidence he sought was of such a nature as to be susceptible to discovery as the actual statement of the deceased. Accordingly, we hold the trial court did not err in overruling defendant's pre-trial motion for discovery and in denying his motion for new trial grounded on the claim the prosecution suppressed information exculpatory to him.

II. The third issue presented for review centers on defendant's contention trial court erred in overruling his objections to hypothetical questions posed by the State on direct examination of two expert medical witnesses, Dr. Carl J. Graf and Dr. Earl F. Rose. The gravamen of defendant's complaint here is that the hypothetical question posed Dr. Graf assumed the deceased was choked and beaten about the legs and neck, facts not in evidence when the question was posed and that the question posed Dr. Rose did not assume pertinent medical facts relating to the deceased's condition. At trial defendant lodged somewhat less specific objections to both questions, contending they assumed facts not in evidence, were improper, incompetent, irrelevant and immaterial. Trial court permitted Dr. Graf to answer the question posed him subject to the State connecting up evidence the deceased was

choked and beaten. That evidence was subsequently supplied by the testimony of Mary Dameron and David Gill. The court overruled defendant's objections to the question posed Dr. Rose.

■ We are committed to a liberal rule on the admission of opinion evidence. The matter rests largely within the discretion of the trial court. Cole v. Laucamp, 213 N.W.2d 532, 534 (Iowa 1973); State v. Milliken, 204 N.W.2d 594 (Iowa 1973). We will reverse only on a clear showing of abuse of discretion. Fischer, Inc. v. Standard Brands, Inc., 204 N.W.2d 579, 582 (Iowa 1973); State v. Peterson, *supra.*

■ Generally, objections to opinion evidence must be reasonably specific, pointing out in what particulars the complaining party believes the foundation to be insufficient. A general objection to hypothetical questions urged at trial is not sufficient. Fischer, Inc. v. Standard Brands, Inc., *supra,* at 582–583; Ganrud v. Smith, 206 N.W.2d 311, 316 (Iowa 1973).

■ Defendant's objections at trial to the hypothetical question posed by the State to Dr. Rose were insufficiently specific to preserve error on appeal. The same might be said of defendant's objections to the question posed Dr. Graf. In any event, trial court did not abuse its discretion in permitting Dr. Graf to answer that question. Defendant's contention otherwise is without merit.

■ III. The fourth issue presented for review derives from defendant's contention trial court erred in sustaining the State's objections to hypothetical questions he propounded to Dr. Graf on cross-examination. He argues here (but did not argue at trial) that those questions were designed to show he did not cause the deceased's death or that a combination of his acts and the treatment given her did not cause death, and thus that trial court's ruling prevented him from presenting his theory of defense. Objections to the questions on the grounds

they were incompetent, irrelevant and immaterial were sustained at trial.

As noted above, we have said the admission of opinion evidence rests largely within the trial court's discretion. We have also said that where the materiality of a question is not apparent, the party seeking to introduce the evidence must state what he expects to prove and thus make its materiality appear. Iowa Power & Light Co. v. Abild Construction Co., 259 Iowa 314, 144 N.W.2d 303, 313; Lemke v. Mueller, 166 N.W.2d 860, 871 (Iowa 1969) and citations. See Wigmore on Evidence, 3d Ed., Vol. 1, § 17(b), p. 319.

The materiality of the questions defendant propounded to Dr. Graf on cross-examination was not made apparent at trial. Moreover, his apparent hypothesis and basis for the question urged here, that decedent's death might have been avoided by more skillful surgical methods, would not make the question material, absent as it is the contention that treatment was the *sole* cause of her death. See State v. Jackson, 223 N.W.2d 229, 233–234 (Iowa 1974), where quoting from State v. Edgerton, 100 Iowa 63, 69 N.W. 280, we said, "It is well established that negligent treatment or neglect of an injury will not excuse a wrongdoer unless the treatment or neglect was the *sole* cause of death." Trial court did not abuse its discretion in sustaining the State's objections to the questions defendant posed Dr. Graf.

IV. Defendant next contends trial court erred in overruling his objection to the admission into evidence of State's Exhibit 10, one of a number of color slides taken by Dr. Rose during autopsy on the body of the deceased, showing an exposed portion of her cervical spine. Defendant concedes the slide was introduced to confirm expert testimony a bone graft or "plug" inserted in the deceased's cervical spine during surgery did not impinge upon her spinal cord, causing death, but claims the slide's probative value was outweighed by the likelihood it would inflame the passions of the jury.

For that reason he contends it should have been excluded from evidence.

Trial courts are allowed broad discretion in admitting pictures of murder victims in evidence. State v. Albers, 174 N.W.2d 649, 657 (Iowa 1970); State v. Miller, 259 Iowa 188, 191, 142 N.W.2d 394, 396. The fact photographs or slides may be gruesome or may tend to create sympathy does not render them inadmissible if there is just reason for their admission. Twyford v. Weber, 220 N.W.2d 919, 926 (Iowa 1974); Udell v. Peterson, 257 Iowa 474, 482–483, 133 N.W.2d 119, 124. In short, legitimate evidence may not be excluded because it may tend to arouse the feelings of the jurors. State v. Triplett, 248 Iowa 339, 79 N.W.2d 391.

State's Exhibit 10 was offered to shed light on the cause of the deceased's death, an issue subject to considerable dispute at trial. It was legitimate evidence of probative value. Trial court did not abuse its discretion in permitting it into evidence.

V. The remaining issues presented for review on this appeal arise in the context of defendant's contention trial court erred in overruling his motions for directed verdict of acquittal and to reduce charges and in overruling his combined post-trial motions for acquittal notwithstanding the verdict, arrest of judgment and in the alternative for new trial. Defendant argues these issues in a single division of his brief, contending trial court erred in submitting instructions on first and second degree murder and asserting defendant's conviction was against the clear weight of the evidence and based on proof of less than all the essential elements of the crime of which he was found guilty. How defendant connects these specific claims with his general contention trial court erred in overruling his various motions is not entirely clear, his argument apparently being the evidence did not justify the murder instructions or his conviction. All the issues presented go ultimately to the sufficiency of the evidence presented at trial.

Defendant argues the murder instructions were improper and the verdict against the weight of the evidence because the evidence failed to establish he acted premeditatedly, deliberately and with malice aforethought, and that his use of force against the deceased caused her death. The record does not support defendant's position. Mary Dameron testified at trial that defendant attempted to force the deceased's car off the road as she approached her home during the early morning hours of April 2. She further testified to having observed the defendant strike her mother and beat her about the neck. David Gill, a guest in the deceased's home on the morning in question, testified that he heard defendant threaten to kill the deceased. He also testified defendant choked the deceased and beat her about the legs and neck. Both Drs. Rose and Graf expressed opinions that the injuries inflicted upon the deceased could have caused her death. From the testimony of these witnesses, corroborated in part by others, the elements necessary to justify instructions on first and second degree murder and evidence sufficient to permit a finding of guilty of the crime of manslaughter could be inferred.

The instructions were therefore properly submitted and defendant's conviction was not against the clear weight of the evidence.

We find no error and affirm trial court.

Affirmed.

All Justices concur, except RAWLINGS, J., who concurs in result.